**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **JAMAICA BEACH STR ASSOCIATION, DEBRA TABBERT, MARISOL GARZA-FLOREZ, PARAS RANA, and VICTOR CARRION,** *Plaintiffs*, <br><br> **v.** <br><br> **CITY OF JAMAICA BEACH, TEXAS, PAM JOSSELET in her official capacity as an employee of the City of Jamaica Beach, Texas,** *Defendants*. | § § § § § § § § § § § § § § § | **Civil Action No. _____** |

## ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs Jamaica Beach STR[1] Association (the "Association"), Debra Tabbert ("Tabbert"), Marisol Garza-Florez ("Garza-Florez"), Paras Rana ("Rana"), and Victor Carrion (collectively, "Plaintiffs") file this Original Complaint against Defendants, the City of Jamaica Beach, Texas ("City"),[2] and City employee Pam Josselet in her official capacity ("Josselet") (collectively, "Defendants"). Plaintiffs also seek preliminary injunctive relief.

---

[1] "STR" refers to short-term rental.

[2] Plaintiffs refer to the Defendant entity, the City of Jamaica Beach, as "City," and refer generally to the geographical area controlled by the City as "Jamaica Beach."

**INTRODUCTION**

1.      This civil rights lawsuit challenges Defendants' denial of longstanding property rights and the implementation of a government scheme that impinges upon homeowners' use of their property, improperly restricts residential uses, and orders the monitoring and surveillance of the comings and goings of people at ordinary homes, in violation of the United States and Texas Constitutions.

**PARTIES & SERVICE**

2.      Plaintiff Jamaica Beach STR Association is a Texas nonprofit corporation whose purpose is to promote its homeowner members' common interests, protect and advance homeowner rights, and improve conditions for short-term rental property owners. It is composed of owners of homes in Jamaica Beach, Texas, who seek to rent out homes for any duration they deem in their best interest, but particularly terms of less than 30 days. The Association fully and adequately represents each and every individual member of the corporation. *See Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019).

3.      Plaintiff Debra Tabbert is a resident of Texas. She owns property in Jamaica Beach, and is a Director of the Association. She has owned a home in Jamaica Beach since 2010, before the City enacted any STR ordinances.

4.      Plaintiff Marisol Garza-Florez is a resident of Texas. She owns property in Jamaica Beach, and is a Director of the Association. She has owned her home in Jamaica Beach since 2017.

5.      Plaintiff Paras Rana is a resident of Texas, a homeowner in Jamaica Beach,

2

and a Director of the Association. He has owned his home in Jamaica Beach since May 20, 2021.

6.      Plaintiff Victor Carrion is a resident of Texas, a homeowner in Jamaica Beach, and a Director of the Association. He has owned his home in Jamaica Beach since July 31, 2023.

7.      Defendant, the City of Jamaica Beach, Texas, is a Texas general law municipality in Galveston County, Texas that was created in 1975. It may be served through its Mayor, clerk, secretary, or treasurer at 16628 San Luis Pass, Jamaica Beach, TX 77554. Tex. Civ. Prac. & Rem. Code § 17.024(b).

8.      Pam Josselet is an employee of the City of Jamaica Beach, Texas and oversees its STR program. Josselet is sued in her official capacity and may be served with process at 4408 Pelican Way, Jamaica Beach, TX 77554, or wherever she may be found.

9.      The Attorney General of Texas is being served a copy of the Complaint and is entitled to be heard because this case raises a constitutional challenge to an ordinance. Tex. Civ. Prac. & Rem. Code § 37.006(b).

**JURISDICTION & VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Fifth and Fourteenth Amendments to the United States Constitution; 28 U.S.C. § 1343(a)(3), because it is brought to redress deprivations, under color of state law, or rights, privileges, and immunities secured by the United States Constitution; and 28 U.S.C. § 1343(a)(4), because it seeks to secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983,

3

which provides a cause of action for the protection of civil and constitutional rights.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) over state constitutional and statutory claims.

12.     This Court has the authority to grant declaratory relief under 28 U.S.C § 2201; permanent injunctive relief under 28 U.S.C. § 2202; and attorneys' fees under 42 U.S.C. § 1988. It also has subject matter jurisdiction pursuant to the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001 because Plaintiffs' rights, legal status, and other legal relations are affected by a law that is constitutionally invalid. This Court has jurisdiction over the requested injunctive relief pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 37.011, 65.011.

13.     The Association has standing as the representative of its members because its member property owners of Jamaica Beach homes would otherwise have standing to sue in their own right, and the interests the association seeks to protect are germane— indeed central—to the Association's purpose. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Though the claims herein do not require the participation of individual members, individual members are also parties. When seeking declaratory and injunctive relief without damages, associational standing is generally justified. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010).

14.     Venue is proper because the claims arose within this judicial district. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 124(d).

**FACTS**

**A. Short-term leasing is a residential use, and the historical norm.**

15.    Private property ownership is a fundamental right. Part of a property owner's rights is the right to lease. *See Tarr v. Timberwood Park Owners' Ass'n, Inc.*, 556 S.W.3d 274, 289-92 (Tex. 2018) ("[t]he right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess") (quotation omitted).

16.    For centuries, landlords have decided how long tenants may stay. That freedom lies at the heart of free enterprise and personal liberty. Texans have been renting their homes to others for less than thirty-day terms since before Texas was a state, and the Texas Supreme Court has clearly held that short-term renting is a residential use, not a business or commercial use, as those opposed to property owners' exercise of their fundamental property rights often assert. *See*, *e.g.*, *Tarr*, 556 at 289-92. This is by far the majority rule in the United States. *See Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, No. 22-cv-247-DKW-RT, 2022 WL 7471692, at *7 n. 16 (D. Haw. Oct. 13, 2022) (cataloging cases, 19-5).[3]

17.    Americans and Texans therefore have a natural, fundamental, vested, settled, and pre-constitutional right to live in, occupy, and come and go to and from private homes without government permission, monitoring, control, and surveillance. Texas state and federal courts have repeatedly recognized and reaffirmed these rights—including that

---

[3] In the 1980s and 1990s, beach communities along the east coast of the United States attempted to discriminate against the practice, but these restrictions were held to exceed the local zoning power.

5

short-term leasing is subsumed within the constitutionally protected right to lease property. *See*, *e.g.*, *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 580 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("short-term rentals have long been done in Tiki Island"); *Zaatari*, 615 S.W.3d at 191 ("short-term rentals are an "established practice" and a "historically . . . allowable use" and STR ordinance was unconstitutionally retroactive). Taking away this right and its liberty component results in an Orwellian police state.

18.     With respect to surveillance and monitoring, the right to determine one's own comings and goings on private land implicates the deepest, most fundamental liberty interests. Homeowners and tenants alike have a reasonable expectation of privacy in their residence, regardless of the duration of their stay. In our free society, people are not obliged to explain why they go places, how long they stay there, with whom they stay, or what they do in the privacy of homes they rent. There are countless reasons why people stay in a place for short periods, and why they might want to live temporarily in a home in a neighborhood instead of in a generic tilt-wall hotel near the highway. People reside temporarily in a place to get away; to vacation; be near loved ones in quarantine or under treatment; to be near a spouse at a job or on a duty rotation in the military; to help displaced people or to have a home while displaced; to have a home away from home between long-haul routes; to vacation. The explanations are as varied as people.

19.     Cities, however, increasingly seek to control people's comings and goings on private land and interrogate them about their private affairs. Multiple prohibitions on short-term renting have been challenged under both the United States and Texas Constitutions, and have been struck down or preliminarily enjoined.

**B. Short-term leasing for residential use is just leasing; duration of stay is not a metric of anything.**

20. The first Texas regulations of short-term rentals did not appear until well into the 21st century, mostly in the last decade. Such regulations often claim that short-term rentals must be regulated because they cause nuisance behaviors or are generally incompatible with residential use.

21. But no empirical data, evidence, or study extant—and there are many—has ever shown that the length of a tenant's stay in a private home has any bearing on the prevalence of any harm caused by tenants. If anything, the empirical data have consistently shown that short-term tenants cause fewer harms than tenants for 30 days or more. It is also much harder to evict troublesome longer-term tenants, whereas short-term tenants can be evicted immediately. *See* Tex. Prop. Code Chs. 91-92 (residential leasing statutes). And when regulations have been challenged, the cities' own data (or complete lack thereof) have refuted any claims to increased nuisance or public harm.

22. Proffered rationales to restrict STRs are a pretext to create a monitoring and surveillance state to control the comings and goings of ordinary people at private homes. People who, for whatever reason, need a home to reside in for a short period are being redlined—forbidden to stay in a home—based on the mere status of their length of stay.

23. But leasing for whatever duration a landlord and tenant decide works best for them is *just leasing*, so long as tenants do what people ordinarily do in a home. *See Tarr*, 556 S.W.3d at 289-92; *see also JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n, Inc.*, 644 S.W.3d 179, 185 (Tex. 2022); *Zaatari v. City of Austin*, 615 S.W.3d 172,

190 (Tex. App.—Austin 2019, pet. denied) (a ban on . . . short-term rentals does not advance a zoning interest because both short-term rentals and owner-occupied homes are residential in nature).

24.    Here, Defendants impose and enforce arbitrary and unduly burdensome policies and requirements on renting for less than 30 days. Their actions lack any rational connection to any reasonable health or safety concern,[4] and the City has no empirical data, studies, or evidence that the status of a tenant's duration of occupancy in a private home has any bearing on harm to the community. Defendants' arbitrary eradication of long-established rights violates both the United States and Texas Constitutions. Their conduct should be enjoined and the City's STR ordinance declared unconstitutional.

**C. The City incorporated in 1975, and homeowners in Jamaica Beach have enjoyed the right to lease their property for short terms long before the City ever started regulating short-term rentals.**

25.    The City comprises less than a square mile. The City's website notes that the City was "born as a weekend playground in 1956" and incorporated in 1975.[5]

26.    On Galveston island, short-term rentals have been a well-established part of residential areas. Owners have both personal and financial motivations for leasing for short terms, implicating both liberty and economic interests. A homeowner who rents their property for short terms not only receives income to help with the cost of home renovations, taxes, and other expenses, but may also regularly use and enjoy their property between leases. Funds from short-term rentals also help homeowners afford to hold the property for

---

[4] *See Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 88 (Tex. 2015) (rational basis review).
[5] *See* City of Jamaica Beach, City History, *available at* https://www.jamaicabeachtx.gov/city-history (last visited January 26, 2026).

their own future use, such as living in during retirement.

27.     For generations, Texas and Jamaica Beach homeowners have long exercised and enjoyed the settled right to rent their homes to others for whatever length of time best serves these families' needs, including renting on a short-term basis. Historically, most homes were vacation homes or second homes, so owners earned rent when they were not staying in them. Short-term home rentals, therefore, have not only been occurring in Jamaica Beach for decades, they are the City's reason for being.

### D. From 2021 to April 2025, the City increased its control over rental properties by classifying residential leases differently based on duration, and began ratcheting up its restrictions and control over STRs, with no evidence of harms.

28.     Despite homeowners' historical use and right to lease and set lease terms in Jamaica Beach, these rights are constantly on the knife's-edge, subject to revocation, suspension, or denial at the whims of local officials.

29.     Starting in 2021, the City began regulating residential leasing for the first time. It began classifying leases differently according to how long a home was leased out. It enacted ordinances for both long-term and short-term rentals, defining the latter as a rental more than 30 consecutive days. *See* City of Jamaica Beach, Ordinance No. 2021-06 (July 19, 2021)[6] & Ordinance 2021-07 (Aug. 16, 2021). For long-term rentals, homeowners had to notify the City and receive a return approval, which served as "registration." For STRs, the City created a licensing scheme requiring an application, a $50 fee, and the City's

---

[6] Plaintiffs ask that the Court take judicial notice of the City's ordinances that are cited and linked herein, pursuant to Fed. R. Evid. 201.

issuance of STR "registration number" before a homeowner could lease short term. It also required that a "local contact person" respond "within 60 minutes of being notified of concerns or requests for assistance."

30.     This was the first time homeowners in Jamaica Beach needed government permission to lease out their homes, and it applied to the kind of leasing which had been occurring at Jamaica Beach for decades without regulation.

31.     After 2021, the City began amending its ordinance to increase its restrictions on property owners who choose to rent for short terms.[7] The most current ordinance, passed in January 2026, is the most stringent. The City seeks to keep out people who, for the many reasons people need or want short-term housing, the City deems unworthy or unqualified to stay in a private home. In the process, landowners are denied their right to decide who stays in their homes, and for how long.

32.     The City has never revisited the rental ordinance which applies to homes rented for 30 days or more. Owners of homes in Jamaica Beach have no burdens at all when leasing out their homes for 30 days or more and do not need any license.

33.     In 2023, the City ratcheted its control **way** up, increasing the requirements to obtain government permission to lease a private home for less than 30 days. Between October and December 2023, the City issued Ordinance Nos. 2023-11, 2023-13, 2023-14, 2023-15, and 2023-16 imposing a slew of new obligations, including a $250 annual fee for licensure, set maximum occupancy limits, requiring drawings of homes, new posting

---

[7] In 1997, the City began taxing "house" and "tourist home" rentals of less than 30 days, but did not otherwise restrict or regulate them.

requirements, and requiring government inspections of homes "to determine accuracy of the short-term rental application information." Defendants defined "Qualified Bedroom" to mean the number of bedrooms listed by the Galveston County Appraisal District's ("GCAD") as living area square footage—with no legal basis or precedent. The City even *criminalized* violations, imposing fines and all other available civil and criminal penalties (*see* Ordinance 2023-11 at p.6). The City continued its prior requirement that a "Local Contact Person" be available 24 hours a day, and respond within 60 minutes of being notified of concerns or complaints about the condition, operation or conduct of STR tenants. Finally, it afforded the City Council unbridled discretion to revoke a license for any "violation of this Ordinance," affording an owner no due process.

34.    In sum, with the 2023 ordinance, a short-term stay in a home became a status crime and invoked the heavy hand of government monitoring, control, and surveillance of ordinary people living in private homes.

35.    In 2024, with Ord. No. 2024-09, the City even subjected STR "platforms" to criminal penalties for not including certain information, and not collecting occupancy taxes.

36.    In April 2025, the City amended its 2023 STR ordinance with Ord. No. 2025-03 to further ratchet up the City's control over private residential home stays. Among the 2025 restrictions were the following:

   a. authorizing the City to seek a warrant if an owner did not voluntarily agree to allow an inspection of a home, and the warrant could be based on nothing more than the City's desire "to determine accuracy" of the owner's STR license application;

11

b. broadening the kinds of violations which could result in suspension beyond violations of the STR ordinance itself, including noise, disorderly conduct, and other misconduct;

c. allowing permanent revocation of an owner's "right to Short-Term rent their property following 2 suspensions"; and

d. further restricting occupancy by re-defining "Qualified Bedroom" to impose even more restrictions, meaning rooms that had long been used as bedrooms to determine occupancy were now excluded for STRs, even though long-term rentals and owner-occupied homes could use them.

37. The April 2025 ordinance recited, without any support, that when tenants leases for 29 days or less, there are "negative ancillary impacts" on "surrounding properties and permanent residents." The 2025 ordinance also recites an intent "to safeguard the life, health, safety, welfare, and property" of short-term tenants, neighbors, and the general public. The City neither developed nor possesses any data, studies, or evidence that a short duration of tenant stay results in more or different harms of any kind than any other form of residential home occupancy, including leasing for more than 30 days. It also has other ordinances to address the City's proffered concerns, such as its 2025 general noise ordinance, applicable city-wide, Ord. No. 2025-05.

38. The City's increasingly restrictive STR ordinances and policies are also frequently changed and confusing, making it difficult for homeowners to stay in compliance. Over the past five years, since June of 2021 the City has enacted or amended 9 separate ordinances, constantly changing and increasing its oversight, control and limitations relating to STRs:

i. Ordinance No. 2021-06 **REPEALED BY ORDINANCE 2023-11 ON OCTOBER 26, 2023** ESTABLISHING REGULATIONS AND PERMITTING REQUIREMENTS FOR OPERATION OF A SHORT TERM RENTAL,

12

ii.   ORDINANCE NO. 2023-11   **AMENDED BY ORDINANCES 2025-03, 2023-13, 2023-14, 2023-15, 2023-16 and 2024-09 AND REPLACING ORDINANCE NO. 2021-06**  CITY OF JAMAICA BEACH AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS, AMENDING THE REGULATIONS AND PERMITTING REQUIREMENTS FOR OPERATION OF A SHORT TERM RENTAL WITHIN THE CITY; PROVIDING A PENALTY FOR VIOLATIONS, AND PROVIDING FOR AN EFFECTIVE DATE.

iii.   ORDINANCE NO. 2023-13   AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS AMENDING ORDINANCE 2023-11; TO CHANGE THE WORDING ON PAGE 5 SECTION SHORT TERM RENTAL OPERATIONAL REQUIREMENTS PARAGRAPH A. FROM "ON THE BACK OF THE FRONT DOOR" TO "IN A LOCATION VISIBLE TO ALL GUESTS"

iv.   ORDINANCE NO. 2023-14   AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS AMENDING ORDINANCE 2023-11; TO ELIMINATE PARAGRAPH D AT THE TOP OF PAGE 6 THAT READS: THE OWNER SHALL POST THE FOLLOWING OUTSIDE THE HOUSE: STREET NUMBER ON THE HOUSE AND A SIGN THAT CONTAINS THE (1) SHORT TERM RENTAL REGISTRATION NUMBER AND (2) THE LOCAL 24 HOUR CONTACT TELEPHONE NUMBER. THE POSTING REQUIRES A MINIMUM OF TWO (2) INCH LETTERING VISIBLE FROM THE PUBLIC STREET FOR EMERGENCY AND POLICE RESPONDERS.

v.   ORDINANCE NO. 2023-15   AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS AMENDING ORDINANCE 2023-11; PAGE 4, PARAGRAPH 14 TO READ: THE OWNER SHALL GRANT PERMISSION TO THE CITY WITH THIRTY (30) DAYS WRITTEN NOTICE TO PERFORM AN ON-SITE INSPECTION OF THE SHORT TERM RENTAL TO DETERMINE ACCURACY OF THE SHORT TERM RENTAL APPLICATION INFORMATION OR IF THERE HAS BEEN A WRITTEN COMPLAINT TO THE CITY FROM OCCUPANTS ABOUT THE SAFETY OF THE SHORT TERM RENTAL.

vi.   ORDINANCE NO. 2023-16   AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS AMENDING ORDINANCE 2023-11.  PAGE 2, ITEM M: MAXIMUM OCCUPANCY – THE MAXIMUM OCCUPANCY SHALL BE WHICHEVER IS LESS: EITHER A) TWO (2) PERSONS PER QUALIFIED BEDROOMS, PLUS FOUR (4) ADDITIONAL PERSONS OR B) GALVESTON COUNTY APPRAISAL DISTRICT LIVING AREA SQUARE FOOTAGE DIVIDED BY 150 SQUARE FEET ROUNDED UP.  PAGE 3, NUMBER 9: MAXIMUM OCCUPANCY FOR THE SHORT-TERM RENTAL BASED ON WHICH EVER IS LESS: EITHER A) TWO (2) PERSONS PER QUALIFIED BEDROOM(S) PLUS FOUR (4) ADDITIONAL PERSONS OR B)

vii.　GALVESTON COUNTY APPRAISAL DISTRICT LIVING AREA SQUARE FOOTAGE DIVIDED BY 150 SQUARE FEET ROUNDED UP.

vii.　ORDINANCE NO. 2024-09　　AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS AMENDING ORDINANCE 2023-11; AMENDING THE DEFINITION FOR SHORT TERM RENTAL PLATFORM; TO DIRECT ALL PLATFORMS THAT DISPLAY SHORT TERM RENTAL LISTINGS FOR PROPERTIES IN JAMAICA BEACH, TEXAS TO REQUIRE THAT ALL OWNERS USING THE PLATFORM INCLUDE A CITY-ISSUED REGISTRATION NUMBER IN ANY LISTING FOR A SHORT TERM RENTAL; SHORT TERM RENTAL PLATFORMS SHALL REMOVE ANY LISTING FOR A SHORT TERM RENTAL AFTER NOTIFICATION BY THE CITY THAT THE REGISTRATION NUMBER ASSOCIATED WITH THE SHORT TERM RENTAL LISTING IS INVALID, EXPIRED, OR HAS BEEN REVOKED; AND SHORT TERM RENTAL PLATFORMS THAT FACILITATE BOOKING TRANSACTIONS IN JAMAICA BEACH, TEXAS SHALL COLLECT IN LIEU OF SHORT TERM RENTAL OWNERS AND REMIT TO THE CITY THE APPLICABLE JAMAICA BEACH, TEXAS HOTEL OCCUPANCY TAX, AS CALCULATED ON THE AMOUNT OF CONSIDERATION THAT SHORT TERM RENTAL GUESTS PAY TO THE SHORT TERM RENTAL OWNER.

viii.　ORDINANCE NO. 2025-03　　**REPEALED BY ORDINANCE 2026-01** AN ORDINANCE OF THE CITY OF JAMAICA BEACH, TEXAS, AMENDING THE REGULATIONS AND PERMITTING REQUIREMENTS FOR OPERATION OF A SHORT-TERM RENTAL WITHIN THE CITY; PROVIDING A PENALTY FOR VIOLATIONS, AND PROVIDING FOR AN EFFECTIVE DATE **AMENDS ORDINANCES 2023-11, 2023-13, 2023-14, 2023-15, 2023-16 AND 2024-09**

ix.　ORDINANCE NO. 2026-01 AN ORDINANCE REPEALING ORDINANCE 2025-03 IN ITS ENTIRETY; ESTABLISHING COMPREHENSIVE REGULATIONS, REGISTRATION, AND ENFORCEMENT FOR SHORT TERM RENTALS; PROVIDING PENALTIES; AND PROVIDING AN EFFECTIVE DATE. **REPLACES ORDINANCE 2025-03**[8]

39.　The City did not inform existing homeowners as it adopted each new ordinance. Some owners would continue with their longstanding practices in renting out their homes, unwittingly violating new ordinances merely by continuing to engage in an

---

[8] *See* City Ordinances, City of Jamaica Beach *available at* https://www.jamaicabeachtx.gov/city-ordinances (last visited January 27, 2026). Plaintiffs ask that the Court take judicial notice of the City's ordinances that are cited and linked herein, pursuant to Fed. R. Evid. 201.

14

ordinary, longstanding residential use in a residential area.

### E. The City imposes criminal penalties on STR homeowners and revokes existing STR licenses, while it delays and denies applications for new STR licenses.

40.    From 2021 onward, the City has made it a crime to do what owners in the City had long been doing: renting out homes for less than 30 days without a City-issued license—i.e., without government permission to allow someone to stay in a private home.

41.    In 2023, the City began prosecuting owners, including members of the Association, for violations of whatever STR ordinance was in effect. Violations issued for purported non-payment of occupancy taxes or the failure to obtain an STR license have zero to do with public health or safety concerns.

42.    City employees with direct authority over the issuance of STR licenses, including Josselet, have taken the illegal position that a home rented out for a short period is no longer being used for residential purposes and therefore should not be treated like one. *See, e.g. Tarr*, 556 at 291 (holding residential use is residential use, "no matter how short-lived"). This wrongful policy has impeded new STR license applications. As the City took the position that homeowners should not be allowed to rent out homes for short terms, City officials began slow-walking or stonewalling licenses. This impacts not only those applying for a new STR license, it impacts all STR license holders, as they are required to renew every year.

43.    STR license applications take many weeks or months to process, while in the meantime City employees monitor and surveil homes to determine who is staying in homes, and for how long—Josselet also participates in monitoring and surveilling private

15

homes. This is done specifically to harass STR homeowners and their tenants, and to generate purported evidence the City wants to use to deny pending STR license applications and revoke existing STR licenses.

44.     A property owner's liberty interest includes not only the freedom to decide lease terms without government interference, but also to be free from government intrusion, monitoring, surveillance, and control when occupying a private residence. That applies to owners and tenants alike since the government's enforcement regime necessarily intrudes upon *any* occupant or visitor at a private home to determine whether they are persons authorized by the government to stay in a private home.

45.     City officials have even enforced purported violations of new ordinances while homeowners try to comply with the City's ever-changing ordinances and policies. Homeowners are also punished for continuing to rent for short terms *while trying to get a license* to exercise their established, historical right to rent for short terms.

46.     In addition to its constantly changing ordinances, the City has made the process of submitting applications onerous and unreasonable, creating confusing and conflicting standards and requirements. It is not only difficult for owners to pay rental occupancy taxes or submit applications for a STR license, the City has made it intentionally confusing and almost impossible. The City has implemented multiple different systems and procedures from 2023 to 2024, causing owners to inadvertently miss paying taxes, or even for the City to claim that it lost payments that were made. For example, Josselet has repeatedly informed homeowners that she cannot find receipts that have been submitted to the City multiple times. Defendants then used "missed payments" as a basis for denying or

revoking short-term rental licenses—and thus the right to rent a home for a short term.

47.     City employees have actively hampered and obstructed homeowners' ability to defend themselves in court against violations by purposefully withholding City records from citizen defendants. Homeowners have therefore been deprived of a full and fair defense to maintain their STR licenses, based on Defendants' direct, targeted, and wrongful conduct.

48.     The foregoing acts of City officials have created conflict within City government, resulting in some officials' resignations in protest of the exercise of unbridled discretion by officials who were taking away homeowners' leasing rights.

### F.  The City clamps down further in January 2026, ramping up its STR license revocations.

49.     On January 8, 2026, the City adopted yet another new STR ordinance, this time an even more mind-bogglingly complex and onerous ordinance that replaced all prior ones, with a blizzard of requirements and impositions on land use which expressly do not apply to leases over 30 days. City of Jamaica Beach, Ordinance No. 2026-01 (Jan. 8, 2026) (attached as Exhibit A, "2026 Ordinance").

50.     Within a week of the new ordinance's passage, city officials began using it as a pretext to summarily suspend existing STR licenses for Association members.

51.     For example, the 2026 Ordinance turns constitutional protection on its head and presumes that a tenant or owner are guilty of a crime upon the mere *issuance* of a criminal citation, code violation, lapse in payment of fees or taxes, failure to maintain $1,000,000 in general liability insurance, or violation of the 2026 Ordinance itself. It

defines citation as:

> A written notice or summons issued by a peace officer or other authorized City official alleging a violation of this Ordinance or any other applicable City ordinance or state law, including but not limited to citations issued under Texas Local Government Code § 54.001. A Citation may be issued to a guest, occupant, Owner, Operator, or other responsible person and is independent of any subsequent criminal prosecution or court disposition.

Exhibit A at 2. It then makes the mere *issuance* of a criminal citation a basis for sustaining a verified violation even if the underlying citation is dismissed or there is an acquittal. *Id*. at 15.Among

52.    Among the 2026 Ordinance's provisions are the following:

**WHEREAS**, the City Council finds that an enforcement system—using criminal citations for guest conduct and administrative enforcement for owner and operator obligations, operating independently of criminal convictions under Texas Local Government Code §54.001—provides a fair and effective mechanism to achieve timely compliance and protect neighborhoods; and

…

> L. Criminal Penalties: Criminal enforcement for violations of this Ordinance or any other applicable City ordinance remains available under Texas Local Government Code §54.001,[][9] and criminal penalties shall be prosecuted as Class C misdemeanors as provided by law.

Exhibit A at 1, 16.

53.    The 2026 Ordinance allows no cure period whatsoever for several purported violations, and expressly provides that homeowners need not receive any notice before the City records a guest citation as a verified violation—and then use that "verified violation" as a reason to revoke a homeowner's STR license. It also thwarts constitutional search-

---

[9] Section 54.001 provides that a City's governing body "may enforce each rule, ordinance, or police regulation…and may punish a violation"; it also sets fine or penalty limits. Tex. Loc. Gov't Code § 54.001.

and-seizure protection by granting the City the authority to search homes upon demand and, if a homeowner refuses to consent to an inspection, gives the City authority to seek a warrant to inspect under article 18.05 of the Texas Code of Criminal Procedure. Exhibit A at 7 ¶ 15.[10]

54. The 2026 Ordinance also requires homeowners to present "[p]roof of $1,000,000 general liability insurance." Exhibit A. Defendants, however, do not accept liability insurance provided by third parties such as AirBNB or VRBO for this requirement, instead forcing homeowners to obtain a separate $1 million policy—essentially requiring *$2 million* in liability coverage.

55. This new requirement is no mere inconvenience, and lacks any rational basis. Defendants suspend STR licenses as of January 31st and require homeowners to reapply every year. This new insurance requirement has proven infeasible or unavailable for existing owners, resulting in their inability to rent for short terms owing solely to a requirement that does not apply to owner-occupied or other rental homes.

56. The City's processes—from its ever-changing ordinances to its overcomplicated policies and requirements—are intentionally installed to prevent Jamaica Beach homeowners from leasing their properties short term. Plaintiffs, individual members of the Association, and homeowners are being denied licenses and deprived of meaningful due process when seeking licenses. They are being treated differently than other property owners and landlords based solely on the fact that they rent for 30 days or less or seek to

---

[10] Section 18.05(b) does not allow a warrant to issue without probable cause that a fire or health hazard, or an unsafe building condition actually exists. Tex. Code Crim. P. § 18.005(b).

do so. Their preexisting and settled right to lease for short terms is being denied to them by the City. City officials act with unbridled discretion by suspending, revoking, and denying licenses without affording owners fair hearing, due process, or a rationale.

### G. Defendants have effectively taken away the right to lease for short terms despite an ostensible licensing scheme, and in the process have harmed property owners.

57.    Defendant Josselet issues nearly all STR-related decisions, often denying applications and imposing contradictory and inconsistent requirements on homeowners. She has issued suspensions of STR licenses without prior notice and has constantly changed STR processes and policies, making it impossible to comply. She and other City officials have adopted and enforced a policy of depriving Plaintiffs of their constitutional rights, including by:

a. revoking and suspending STR licenses without adequate notice and on technical violations;

b. intentionally targeting homeowners who lease their homes short term, intentionally enforcing City ordinances unequally against STR owners than against other homeowners;

c. arbitrarily reducing occupancy limits for STR leases despite homes having sufficient space for higher occupancy, being grandfathered in, and owners having leased at higher occupancy in the past;

d. arbitrarily refusing to recognize group insurance policies with no rational basis;

e. creating an intentionally confusing and constantly changing process to obtain and maintain an STR license and refusing to accept or acknowledge receipt of payments and applications;

f. threatening owners with punishment such as pulling construction permits, additional fines, and criminal charges; and

g. forcing homeowners to remove and alter improvements under threat of

revocation of STR licensing.

58.     Josselet has given inconsistent information to homeowners about who creates the policies and requirements she disburses to STR property owners. She has told some property owners that she does *not* make the policies, and has told others that she has made serious changes to property owner license requirements based on her own analysis.

59.     Regardless, the City is aware of Josselet's actions, which are done pursuant to the City's policy to make it more difficult to rent homes short term in the City and reduce the number of homeowners who lease their properties short term. Josselet's participation in and furthering of this policy includes encouraging the harassment of STR homeowners in Jamaica Beach by, among other things, making false police reports, surveilling homeowners and their tenants, and demanding unequal enforcement of City ordinances against STR homeowners and their tenants.

60.     Tabbert purchased in 2010, well before the City started regulating STRs. The City's ordinances impose obligations upon her pre-established fundamental, settled, and vested property rights. Defendants have most recently prohibited Tabbert's use of her first-floor rental area, reducing her approved occupancy for short-term leases, despite her home being grandfathered in against such requirements.

61.     Josselet has slashed the occupancy of Garza-Florez's home. Josselet has also emailed Garza-Florez on multiple occasions with conflicting and false information relating to her STR license—at one point telling Garza-Florez that her STR license was suspended and revoked and could **never** be renewed, and at other times instructing Garza-Florez that she cannot use her downstairs *for any purpose*, even though it is habitable space upon

21

which she pays property taxes. This unilateral reduction in occupancy has cut Garza-Florez's rental income by 50%.

62.     Defendants also actively monitor and surveil STR homeowners and their tenants. This has serious repercussions on their right to use and enjoy their property. For example, Garza-Florez has stopped inviting relatives over, and stopped using the downstairs living space out of fear that Josselet or another City official will cite her and attempt to further impair her property rights. Tenants are also subjected to harassment from Defendants, who drive around in golf carts reporting alleged violations to the police. Defendants' improper acts and surveillance not only amount to harassment, but evidence their bias against STR homeowners.

63.     Numerous Jamaica Beach homeowners, including all or most Association members, have entered into agreements with tenants for short-term leases extending months or years into the future. Owners and tenants alike have planned their lives and livelihoods around these leases. Defendants' actions have harmed, and will harm, Plaintiffs and Association members, who have been damaged both personally and financially due to the City's actions in refusing to allow them to honor and complete existing contracts and continue to rent for short terms into the future.

## CAUSES OF ACTION

## <u>COUNT I</u>

**Unconstitutional Retroactive Deprivation of Settled Property Rights in Violation of Article 1, Section 16 of the Texas Constitution**

64.     Plaintiffs re-allege and incorporate the preceding paragraphs here.

65.     The Texas Constitution expressly prohibits the creation of retroactive laws, providing that "[n]o bill of attainder, *ex post facto* law, retroactive law, or any other law impairing the obligation of contracts shall be made." Tex. Const. art. I, § 16; *see also Zaatari*, 615 S.W.3d at 191 (STR ordinance unconstitutionally retroactive); *Browning v. Town of Hollywood Park, Texas*, No. SA-23-CV-01485-XR, 2023 WL 9503457, at *4 (W.D. Tex. Dec. 22, 2023) (PI granted on retroactivity grounds); *Anding v. City of Austin*, No. 1:22-CV-01039-DAE, 2023 WL 4921530, at *10, 2023 U.S. Dist. LEXIS 132883 at *24 (W.D. Tex. Aug. 1, 2023) (STR ordinance unconstitutionally retroactive).

66.     "A retroactive law is one that extends to matters that occurred in the past." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014). In determining whether a retroactive law is unconstitutional, courts consider: "(1) the nature and strength of the public interest served by the statute; (2) the nature of the prior right impaired by the statute; and (3) the extent of the impairment." *Anding*, 2023 WL 4921530, at *10. A plaintiff must show that a settled and reasonable expectation of a constitutional right has been impacted. *Id.*

67.     The City has used progressively more onerous ordinances as a pretext to prevent homeowners from renting out their homes for short terms for no other reason than public opposition to short-term tenants, irrational reasoning, without data or evidence in support, and due to their bias and prejudice against non-owners, people from other places, and the whims of individual City officials.

68.     Defendants assert either no interest or a minimal governmental interest in preventing owners of homes from renting them out for short terms. As in *Zaatari*, the 2026

23

Ordinance, like its predecessors, does nothing to advance any legitimate City interest that is not already covered by other ordinances or laws. *See Zaatari*, 615 S.W.3d at 191. The concerns cited by Defendants are the types of problems that can be and already are prohibited by state law or by City ordinances banning harms directly. Even if the 2026 Ordinance did serve a legitimate interest, it is not sufficient to deprive property owners of a settled right to rent for whatever term they deem best.

69. The nature of the prior right impaired is established, and clear. The right to lease short-term has long been a settled right in Texas and in Jamaica Beach. There is evidence of short-term renting in Galveston County and Jamaica Beach-area neighborhoods going back many decades. The Texas Supreme Court has held that:

> [s]ince the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare.

*Spann v. Dallas*, 235 S.W. 513, 515 (Tex. 1921); *see also Money v. City of San Marcos*, No. 24-50187, 2025 U.S. App. LEXIS 2897, at *16 (5th Cir. 2025) (favorably discussing *Spann*). Government regulations that disrupt the settled property rights of those who purchased before the regulation is unconstitutional, unless it is sufficiently tailored to a compelling public purpose. Defendants have none.

70. Here, the Plaintiffs' rights, including rights of Association members, were clearly settled, as they purchased or obtained title to Jamaica Beach homes before, at minimum, the 2026 Ordinance.

71. Tabbert purchased her home in 2010, and Garza-Florez purchased in 2017.

24

They, along with other Association members who purchased their homes before the 2021 ordinance, had a settled, unrestricted ability to set the lease term for their homes, with or without government permission in the form of a license.

72.    Ranas bought in 2021. Owners who bought homes before the 2023 Ordinance had a settled right to rent out homes in Jamaica Beach for short terms with virtually no restrictions since the 2021 ordinance, which inaugurated the City's short-term/long-term classification scheme required only a few basic objective requirements.

73.    Carrion bought in 2023, before the 2025 Ordinance. He, and other Association members who bought before 2025, were free from the specter of being denied the settled right to set the lease term for essentially no reason, or spurious reasons, or the unbridled discretion of City officials, or violations of completely unrelated ordinances or tax laws. Yet that is what they now face, and some have had licenses revoked or suspended for reasons having nothing to do with any public harm. Maximum occupancy limits adopted in 2025 are unconstitutionally retroactive when applied to property owners' habitable space used before 2025.

74.    The effect of the ordinances and the City's actions on settled property rights is clear—Plaintiffs have been unable to lease their homes short-term without arbitrary and capricious government interference, and some homeowners have been denied the right to lease short term entirely. The City's actions and interference plainly has a substantial impact on Plaintiffs' rights.

75.    The 2026 Ordinance, like its predecessors, is unconstitutionally retroactive.

## COUNT II – EQUAL PROTECTION

**Arbitrary discrimination in violation of the Fourteenth Amendment Equal Protection Clause under the United States Constitution and in violation of Article 1, Section 3 of the Texas Constitution**

76.     Plaintiffs reallege and incorporate by reference the preceding paragraphs.

77.     The Equal Protection Clause of the Fourteenth Amendment guarantees property owners the equal protection of law. Under that provision, disparate treatment between similar property uses must bear a meaningful relationship to a legitimate government interest. Mere trivial differences cannot justify disparate treatment.

78.     Additionally, Article 1, Section 3 of the Texas Constitution guarantees property owners the equal protection of law. Under Article 1, Section 3, disparate treatment between similar property uses must bear a real and substantial relationship to a legitimate government interest.

79.     Equal protection claims require the Court to examine the record. Here, facially, the 2026 Ordinance draws a strict distinction between rentals of 29 or fewer days and those for 30 days or more. Rentals of 29 days or less are subject to an overwhelming burden of regulation, while rentals of 30 days or more are all but unregulated in comparison. This facially violates equal protection because there is no non-arbitrary rationale for classifying leasing according to duration.

80.     In the alternative, the 2026 violates equal protection as applied because there is a clear pattern of bias against STR homeowners, and no meaningful or rational distinction between leases with differing terms. Owners who desire to rent for short terms are treated differently than other homeowners in Jamaica Beach, including those living

26

full-time in their homes, and those leasing for over 30 days. Plaintiffs and Association members are not accorded the same respect for their rights as other homeowners, based solely on the fact that they rent to people who stay for less than 30 days.

81. Even to the extent an owner complies with the 2026 Ordinance, on an as-applied basis the right and ability of homeowners to rent for terms less than 30 days still gets revoked, suspended, or denied at the whims of City officials or for trivial, non-harmful violations of unrelated laws or ordinances or just the 2026 Ordinance itself.

82. For example, Association members have had the police called on them and have had citations issued for technical violations of City ordinances, which are then used to deny and revoke STR licenses, while neighbors who *do not* lease their homes short term are allowed to openly and blatantly violate the same ordinances, even after the violations are made clear to City officials. Examples of the City's disparate treatment include citations to STR homeowners for noise and trash ordinances, lighting requirements, fencing requirements, setback regulations, and even the City's refusal to release records for STR homeowners to use in municipal court. Clearly, there is an enforced bias against STR homeowners in Jamaica Beach. City officials have practiced and enforced a differential exercise of official power against Plaintiffs, applying City rules and regulations in a capricious and discriminatory manner against STR homeowners.

83. The arbitrary distinction drawn by the City between leases of differing terms does not meaningfully advance a legitimate government interest. Leasing for all durations is the same so long as the tenants engage in the ordinary incidents of residential use and occupancy. Thus, there is no basis for drawing a line for purposes of restricting some

leasing durations more onerously than others.

84.     Since both short and long-term rentals are ordinary residential uses, and since the evidence shows there is no significant difference between the two that would fall within the scope of the police power, the 2026 Ordinance violates Fourteenth Amendment Equal Protection (and therefore 42 U.S.C. § 1983);[11] as well as Article 1, Section 3 of the Texas Constitution.

**COUNT III – PROCEDURAL DUE PROCESS**

**Arbitrary deprivation of property rights in violation of procedural due process under the U.S. Constitution and Article 1, Section 19 of the Texas Constitution**

85.     Plaintiffs reallege and incorporate by reference the preceding paragraphs.

86.     As part of the bundle of rights that come with the fee ownership of land, Association members have protected property and liberty interests in leasing and, relatedly, determining to whom and how long to lease, and whom to include and whom to exclude from their land.

87.     The Fifth and Fourteenth Amendments to the U.S. Constitution require a fair hearing before an individual can be deprived of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Such procedural due process rules are meant to protect persons from the mistaken or unjustified deprivation of life, liberty, or property. Where historical,

---

[11] Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

fundamental, natural property rights such as leasing are stake, an evidentiary hearing equivalent to a court proceeding is required.

88.     The Texas Constitution goes even further than its federal counterpart by including "an explicit Separation of Powers provision to curb overreaching and to spur rival branches to guard their prerogatives." *In re State Bd. for Educator Certification*, 452 S.W.3d 802, 808 n.39 (Tex. 2014) (orig. proceeding) (citing Tex. Const. art. II, § 1). The fragmentation of Texas's executive branch attenuates the accountability of municipalities, so holding cities to account when taking away people's property rights requires more stringent procedures than under the U.S. Constitution. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 573 (Tex. 2012).

89.     Thus, in Texas, the constitutional guarantee of procedural due course of law requires the government, at minimum, to provide notice that it is depriving a citizen of a liberty or property interest as well as "an opportunity [for the citizen] to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929-30 (Tex. 1995). In the hearing, the citizen's challenge to the deprivation must be determined "according to law." *Freeman v. Ortiz*, 106 Tex. 1, 2, 153 S.W. 304, 304 (1913). In this way, Texas' due course of law guarantee empowers courts to resolve disputes about whether officials are legitimately exercising governmental power within the democratically established limits of the law.

90.     The 2026 Ordinance deprives property owners of fair procedures when they exercise their natural, fundamental, historical right to lease for less than 30 days. Among other things,

a. the 2026 Ordinance creates a blizzard of possible violations which trigger the possible suspension or revocation of an owner's right to lease for less than 30 days, many of which have nothing to do with any kind of harm to anyone but are merely technical, such as violations of the licensing requirements themselves;

b. Defendants impose technical violations of no harm to anyone, resulting in "strikes" against an owner which in turn lead to suspension or complete revocation of property rights and liberty interests in leasing for less than 30 days;

c. even for harms like nuisances or noise, Defendants maintain that the mere issuance of a citation—without any hearing—results in owners being ***presumed guilty*** of causing a nuisance and given "strikes" against their continuing ability to rent for short terms;

d. the 2026 Ordinance actually stresses that owners do ***not*** get a formal evidentiary hearing or quasi-judicial proceeding before facing suspension or revocation of their property rights and liberty; and

e. while Defendants claim the City provides nonevidentiary administrative proceedings and/or appeals, owners are barred from exercising their property rights and liberty interests while the informal proceedings go forward, and in the meantime may suffer additional technical violations compounding the City's case for suspending or revoking owners' rights.

91.    Accordingly, the 2026 Ordinance violates procedural due process owing to Plaintiffs and Association members under the U.S. and Texas Constitutions.

## COUNT IV – SUBSTANTIVE DUE PROCESS

### A. Arbitrary Deprivation of Property Rights in Violation of the Fourteenth Amendment and Article 1, Section 19 of the Texas Constitution

92.    Plaintiffs reallege and incorporate by reference the preceding paragraphs.

93.    Under the Fourteenth Amendment to the United States Constitution, restrictions on private property rights must be rationally related to a legitimate government interest.

94.    Under Article 1, Section 19 of the Texas Constitution, restrictions on private

property rights must be rationally related to a legitimate government interest and not unduly burdensome given the government interest at stake.

95.    The right to own property includes the right to lease that property to others. Texas courts have been clear that this right to lease includes the right to lease short-term. Members of the Association have vested protected interests as property owners. Included in their bundle of rights is the protected liberty interest in leasing to whomever they choose, for however long they choose. They also have the right to include and exclude persons from their land.

96.    Governments cannot restrict these rights unless the restriction is rationally related to a legitimate government interest. Short-term rentals are just an ordinary residential use. They do not produce more harm than other residential uses. Traditional nuisance and misconduct behaviors are not more prevalent with short-term rentals, and such concerns can be addressed by enforcement of traditional misconduct-abatement ordinances of the type the City already has in place. The mere durational distinction between short-term rentals and other residential uses is meaningless as a metric of harm and thus does not justify the wholesale elimination of a well-established property right.

97.    Courts will consider relevant evidence in determining whether a constitutional violation has occurred, and will not simply accept the government's claim that a property use is harmful or incompatible with the area. *See Marfil v. City of New Braunfels*, *Texas*, 70 F.4th 893 (5th Cir. 2023) (summary published reversal of trial court dismissal of substantive due process claims challenging STR ordinance).

98.    Defendants' actions effectively bar property owners from renting for short

terms. The 2026 Ordinance is used to create an insurmountable restriction depending on the whims, animus, or preferences of government officials, and is not rationally related to a legitimate government interest.

99. Facially, the 2026 Ordinance imposes so many burdens on Plaintiffs' property rights that it is, at best, transitory and contingent, so that owners of real property cannot rely on their rights into the future.

100. As applied, the 2026 Ordinance restricts Plaintiffs' rights by effectively eliminating the right to lease for whatever duration they deem best, including short terms, because City officials revoke, suspend, or deny licenses with no legitimate government interest. Defendants subject homeowners to unreasonable and shifting requirements owing to the discretion the City affords to its officials to deny licenses. But under *Spann* and other cases, a traditional use of private property cannot be prohibited solely based on the discretion of government officials or the subjective preferences of a segment of the local population.

101. Even if there were any legitimate interest to support Defendants' actions, the unduly restrictive requirements imposed upon (and wholesale elimination of) homeowners' rights by individual City officials is grossly disproportional to any impact that the 2026 Ordinance will have on a legitimate government interest.

102. The 2026 Ordinance violates the Fourteenth Amendment, and Article 1, Section 19 of the Texas Constitution.

**B. Grant of unbridled discretion in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution**

103.    Plaintiffs reallege and incorporate by reference the preceding paragraphs.

104.    Since shortly after the ratification of the Fourteenth Amendment, the Supreme Court has recognized that land-use licensing decisions must be based on clear objective criteria. A City that grants an individual unbridled discretion to grant or deny licenses or permits based on whatever they deem appropriate is unconstitutional. And an ordinance that grants officials authority to veto land-use licenses based on subjective or vague criteria is unconstitutional.

105.    The 2026 Ordinance, and Defendants' actions, show both defects.

106.    To exercise their traditional right to lease, Plaintiffs and Association members must submit an application for a license. But as applied, the decisionmaker (often, Josselet) has unbridled discretion to obstruct, slow-walk, or outright deny licenses based on technical and abstruse requirements, or on requirements outside a homeowner's control.

107.    The Ordinance also allows City officials to revoke, suspend, or deny licenses without any check on their decision. Josselet and other City officials can stonewall, evade, or affirmatively thwart a homeowner's ability to lease short term—exactly what has occurred with some Association members. This unbridled discretion, standing alone, is sufficient to render the 2026 Ordinance facially unconstitutional.

108.    As applied, the unbridled discretion exercised within the City is aggravated by the fact that an overriding purpose of the technical requirements appears to be to provide a mechanism for government officials to veto new short-term rentals and to shut down

33

permitted short-term rental use based on alleged violations of vague, ever-changing, or hyper-technical rules. In the absence of any clear criteria for determining when to grant a permit, this overreliance on the actions of government officials, in practice, creates an impermissible ban on short-term renting despite the ostensible or facial goal of licensing such rentals.

109. Like the Fourteenth Amendment, Article 1, Section 19 has been read by Texas courts for more than a century to prohibit unbridled discretion in land-use permitting. Accordingly, the 2026 Ordinance violates the Fourteenth Amendment to the United States Constitution, and Article 1, Section 19 of the Texas Constitution.

## DECLARATORY RELIEF

110. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

111. This case is presently justiciable because the 2026 Ordinance applies to Plaintiffs and Association members on its face, and has been applied against Plaintiffs and Association members. An actual and substantial controversy exists between Plaintiffs and Defendants as to Jamaica Beach homeowners' property rights in connection with the 2026 Ordinance—that is, whether the 2026 Ordinance facially violates the United States or Texas Constitutions. Additionally, an actual and substantial controversy exists over Defendants' application of the 2026 Ordinance against Plaintiffs and Association members, and Defendants' concomitant violations of the United States and Texas Constitutions.

112. Pursuant to 28 U.S.C. § 2201, Tex. Civ. Prac. & Rem. Code § 37.003, and

Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court declaring the 2026 Ordinance unconstitutional and void.

## REQUEST FOR PRELIMINARY INJUNCTION

113. Plaintiffs incorporate the above paragraphs here as if set out in full.

114. Plaintiffs Tabbert, Rana and Garza-Florez owned their homes in Jamaica Beach before the City began regulating STRs, and have a pre-existing right to rent their homes short term. Plaintiff Carrion owned before the 2025 ordinance. Both on its face and as applied, the 2026 Ordinance violates Plaintiffs' and Association members' constitutional rights. Without an injunction enjoining the City from enforcing the 2026 Ordinance, Plaintiffs and Association members will be irreparably harmed. If not enjoined by this Court, the City will continue to enforce the 2026 Ordinance in violation of the rights of Plaintiffs and Association members.

115. Between July 2021 and January 2026, the City has increased its control over STRs in Jamaica Beach, with the aim of preventing homeowners from using their property. That aim has succeeded due to the City's unjustified denials, delays, fines, criminal misdemeanor penalties, and revocations of homeowner STR licenses. Defendants' application of City ordinances has resulted in injuries to Plaintiffs, including Association members, who have been forced to comply with unconstitutional ordinances, and have been prevented from the full use and enjoyment of their homes in Jamaica Beach.

116. Plaintiffs ask for the entry of a preliminary injunction to ensure that the status quo is maintained pending trial on the merits, and to prevent further injury to Plaintiffs until that time. To receive a preliminary injunction, Plaintiffs must clearly demonstrate:

35

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable harm if the injunction is not granted;

(3) that the threatened injury outweighs any harm that may result from the injunction to the non-movants; and

(4) that the injunction will not undermine the public interest.

*Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

117.   Plaintiffs are likely to succeed on their constitutional claims against Defendants. Among other things, as discussed above, the 2026 Ordinance amounts to an unconstitutional retroactive law under Texas Constitution Article 1, Section 16. *See Zaatari*, 615 S.W.3d at 191. It is supported by no legislative fact findings to justify the City's restrictive and unequal treatment of STR homeowners. The 2026 Ordinance does nothing to safeguard public health, safety, and welfare that is not already accomplished by existing laws and ordinances.

118.   Plaintiffs will suffer immediate and irreparable harm absent injunctive relief. Plaintiffs have already suffered injuries due to Defendants' actions. Harm is considered irreparable if it cannot be remediated through monetary relief. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Should no injunction issue, STR homeowners in Jamaica Beach will continue to suffer arbitrary and unequal harassment and enforcement actions by the City, without notice or due process.

119.   These injuries greatly outweigh any threat injury claimed by Defendants. The City has other ordinances and laws that address concerns cited in the 2026 Ordinance, including for noise violations or parking issues. Enjoining its enforcement will not harm public safety, health, or welfare.

120.   The balance of equities lies in Plaintiffs' favor. The requested injunction merely requires Defendants to stop violating Plaintiffs' protected constitutional property rights. By contrast, Plaintiffs face significant and potentially permanent damage to their ability to use their property if no injunction should issue.

121.   It is in the public interest to maintain the status quo and permit homeowners in Jamaica Beach to utilize their property without unconstitutional restrictions during the pendency of this matter.

122.   Plaintiffs ask the Court to order that Defendants refrain from enforcing short-term rental ordinances and restrictions, including the recently adopted Ordinance number 2026-01. Without this requested relief, Plaintiffs will suffer irreparable harm, including the deprivation of their constitutional rights.

## PRAYER FOR RELIEF

As remedies for the constitutional violations set forth herein, Plaintiffs respectfully request that the Court

1. set Plaintiffs' request for preliminary injunction for hearing and, after hearing, enter a preliminary injunction against Defendants enjoining the enforcement of the provisions within the 2026 Ordinance pending the outcome of this case;

2. following trial, enter a final judgment:

    i. declaring that the 2026 Ordinance, both on its face and as applied, is unconstitutionally retroactive under article I, Section 16 of the Texas Constitution;

    ii. declaring that the 2026 Ordinance, both on its face and as applied, violates the Fourteenth Amendment to the United States Constitution;

    iii. declaring that the 2026 Ordinance, both on its face and as applied, violates Article 1 Section 19 and Article 1 Section 3 of the Texas

Constitution;

iv.  permanently enjoining Defendants from enforcing the restrictions set out in the 2026 Ordinance against Plaintiffs and Association members;

v.  awarding Plaintiffs their attorneys' fees, costs, and expenses, in this action pursuant to the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. § 1988; and

vi.  granting all other legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

GREER HERZ & ADAMS LLP

By: /s/ Andrew J. Mytelka
Andrew J. Mytelka
Attorney-in-Charge
Federal I.D. No. 11084
State Bar No. 14767700
amytelka@greerherz.com
Angie Olalde
Federal I.D. No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 422-1811 (Fax)

-and-

J. Patrick Sutton
GOTTFRIED ALEXANDER LAW FIRM
State Bar No. 24058143
1505 W. 6th Street
Austin Texas 78703
Tel. (512) 494-1481
patrick@galfaustin.com

**COUNSEL FOR PLAINTIFFS**