IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMAICA BEACH STR ASSOCIATION, DEBRA TABBERT, MARISOL GARZA-FLOREZ, PARAS RANA and VICTOR CARRION, | § § § § § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:26-cv-00031 |
| vs. | § § | |
| CITY OF JAMAICA BEACH, TEXAS, PAM JOSSELET in her official capacity as an employee of the City of Jamaica Beach, Texas, | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR**
**PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ iii

INTRODUCTION AND SUMMARY ............................................................... 1

NATURE AND STAGE OF PROCEEDING ..................................................... 5

ISSUE TO BE RULED UPON AND STANDARD OF REVIEW ................... 5

FACTUAL BACKGROUND ............................................................................. 6

    A. The City began imposing STR regulations in 2021, and Defendants have increasingly restricted STRs since that time. ........................................ 6

    B. Impacts upon Plaintiffs ....................................................................... 11

ARGUMENT ..................................................................................................... 13

    I. Plaintiffs are likely to succeed on the merits of their claims ............... 13

        A. The 2026 Ordinance is unconstitutionally retroactive ................... 13

           i.    For the retroactive 2026 Ordinance to survive, the City must establish a compelling public interest—it cannot ................... 14

           ii.    Plaintiffs' rights are settled, vested, and fundamental .............. 15

           iii.    Extent of the Impairment .......................................................... 18

        B. The City has no interest, or a mere nominal interest, in preventing STRs by overregulating them ....................................................................... 19

        C. Procedural Due Process ................................................................. 20

        D. The 2026 Ordinance imposes disparate treatment of similarly situated homeowners without a real or substantial relationship to a legitimate government interest ...................................................................... 24

        E. The 2026 Ordinance arbitrarily violates Plaintiffs' state and federal rights to substantive due process .................................................... 26

    II. Plaintiffs are likely to suffer irreparable harm without a preliminary injunction pending trial .................................................................... 30

    III. The balance of equities tip in Plaintiffs' favor, and a preliminary injunction

is in the best interest of the public. .......................................................................30

CONCLUSION AND PRAYER ..................................................................31

# INDEX OF AUTHORITIES

<u>Cases</u>

*Anding v. City of Austin*, No. 1:22-CV-01039-DAE,
  2023 WL 4921530 (W.D. Tex. Aug. 1, 2023) ......................................................*passim*

*Browning v. Town of Hollywood Park*, No. SA-23-CV-01485, 2023 WL 9503457, 2023
U.S. Dist. LEXIS 234886 (W.D. Tex. Dec. 22, 2023) ............................................*passim*

*Calcasieu Lumber Co. v. Harris*,
  13 S.W. 453 (Tex. 1890) ............................................................................... 14

*City of Dall. v. Dall. Short-Term Rental All.*,
  No. 05-23-01309-CV, 2025 Tex. App. LEXIS 5127 (Tex. App.—Dallas July 18,
  2025, pet. filed) ......................................................................................... 4, 15

*City of Dall. v. Stewart*,
  361 S.W.3d 562 (Tex. 2012) .......................................................................... 21

*City of Dickinson v. Crystal Cruise Invs., LLC*,
  No. 01-24-00684-CV, 2026 Tex. App. LEXIS 1833
  (Tex. App.—Houston [1st Dist.] Feb. 26, 2026, no pet. h.) ................. 15, 16, 17

*City of Grapevine v. Muns*,
  651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. denied)................................*passim*

*City of Grapevine v. Muns*,
  671 S.W.3d 675 (Tex. 2023) .......................................................................... 22

*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012)........................................................................... 28

*Draper v. City of Arlington*,
  629 S.W.3d 777 (Tex. App.—Fort Worth 2021, pet. denied) ........................................ 17

*Hignell-Stark v. City of New Orleans*,
  154 F.4th 345 (5th Cir. 2025) .........................................................................4, 23

*Freeman v. Ortiz*,
  106 Tex. 1, 153 S.W. 304 (1913) ..................................................................... 21

*Hawkins v. Bleakly*,
  243 U.S. 210 (1917) ...................................................................................... 26

*In re State Bd. for Educator Certification*,
  452 S.W.3d 802 (Tex. 2014) .......................................................................... 21

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) ........................................................... 6

*JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*,
    644 S.W.3d 179 (Tex. 2022) ...................................................... 15, 18

*Marfil v. City of New Braunfels, Texas*,
    70 F.4th 893 (5th Cir. 2023) ........................................................... 19

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................... 20

*Mayhew v. Town of Sunnyvale*,
    964 S.W.2d 922 (Tex. 1998) ............................................................. 4

*Patel v. Tex. Dep't of Licensing & Regul.*,
    469 S.W.3d 69 (Tex. 2015) ................................................... 4, 19, 26

*Robinson v. Crown Cork & Seal Co., Inc.*,
    335 S.W.3d 126 (Tex. 2010) ........................................................... 13

*Simi Inv. Co. v. Harris Cnty.*,
    236 F.3d 240 (5th Cir. 2000) ........................................................... 25

*Spann v. Dallas*,
    235 S.W. 513 (Tex. 1921) ................................................ 4, 14, 15, 26

*Tarr v. Timberwood Park Owners Ass'n*,
    556 S.W.3d 274 (Tex. 2018) ...................................................... 15, 17, 18

*Tenet Hosps. Ltd. v. Rivera*,
    445 S.W.3d 698 (Tex. 2014) ........................................................... 13

*Terrace v. Thompson*,
    263 U.S. 197 (1923) ...................................................................... 14

*Univ. of Tex. Med. Sch. v. Than*,
    901 S.W.2d 926 (Tex. 1995) ........................................................... 21

*Univ. Park v. Benners*,
    485 S.W.2d 773 (Tex. 1972) ...................................................... 15, 16

*Valley v. Rapides Par. Sch. Bd.*,
    118 F.3d 1047 (5th Cir. 1997) ........................................................... 5

*Vill. of Tiki Island v. Ronquille*,
    463 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ............... 3, 16

*Zaatari v. City of Austin*,
  615 S.W.3d 172 (Tex. App.—Austin 2019, pet. denied) .........................................*passim*

<u>Statutes and Constitutions</u>

42 U.S.C. § 1983 ................................................................................................. 25

Tex. Code Crim. P. § 18.005 ............................................................................. 10

Tex. Loc. Gov't Code § 54.001  ........................................................................... 9

<u>Other</u>

Tex. Const. art. I, § 16  ...................................................................................... 13

Tex. Const. art. I, § 19 ...................................................................................... 25

U.S. Const. amend. XIV ................................................................................*passim*

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY INJUNCTION**

Pursuant to the Court's February 19, 2026 order, Plaintiffs Jamaica Beach STR Association (the "Association"), Debra Tabbert ("Tabbert"), Marisol Garza-Florez ("Florez"), and Paras Rana ("Rana") (collectively, "Plaintiffs") file this brief in support of their Motion for Preliminary Injunction. Plaintiffs ask the Court, after a hearing, to enter a preliminary injunction against Defendants, the City of Jamaica Beach, Texas ("City"), and Pam Josselet ("Josselet") (collectively, "Defendants"), enjoining enforcement of the City's 2026 short-term rental ("STR") ordinance.

## INTRODUCTION AND SUMMARY

Jamaica Beach was "[b]orn as a weekend playground in 1956."[1] It has always been a community of beach homes, weekend homes, and STRs. Even today, the City advertises itself as "a great place to visit." **Exhibit A**. Through the decades, this community of long-term and short-term residents is where families have bought vacation homes to enjoy for parts of the year—often with an eye toward retiring by the beach and passing these houses on to new generations. When not occupying their Jamaica Beach properties, many homeowners lease for short terms to help cover expenses like home maintenance and taxes.

In recent years, anti-STR movements have spread across the county. Unfounded allegations and incendiary rhetoric from small groups of vocal residents wanting to exclude "strangers" and "transient" visitors seek to ban or overregulate STRs to make it too difficult and costly for property owners to lease for 29 days or less. In Jamaica Beach, Defendants

---

[1] **Exhibit B** City of Jamaica Beach, https://www.jamaicabeachtx.gov/city-history (visited March 2, 2026).

have increased pressure against STRs, passing several ordinances between July 2021 and January 2026, each one more onerous than the next.

The most recent STR ordinance is 2026-01 ("2026 Ordinance"). **Exhibit C.** The 2026 Ordinance restricts homeowners who have been leasing their properties for short terms for years without restriction—making it unconstitutional as a retroactive law.[2] The 2026 Ordinance regulates leases of 29 days or less, while leases over 30 days are wholly unregulated—resulting in unconstitutional disparate treatment. It also limits maximum occupancy with no basis or data for its restrictions, forcing homeowners to abandon leases of improved, livable spaces in their homes that have leased for years. The 2026 Ordinance imposes a bevy of unduly burdensome requirements under threat of criminal conviction, including that homeowners must obtain a $1 million general liability insurance policy even when they already pay for such coverage through third-party platforms such as Airbnb or VRBO. Homeowners must have someone on call (a 'local responsible party') who can "arrive on-site within one (1) hour of being contacted by the City" and "take on-site corrective action to resolve the issue within two (2) hours of initial contact." **Exhibit C** at 6, art. 3 ¶A(3). Homeowners are penalized with a "verified violation" if either deadline is missed, with no cure period. The 2026 Ordinance further makes a criminal citation "an immediate" violation, with no cure period, "independent of any dismissal" or "acquittal."

This death-by-a-thousand-cuts approach allows Defendants to issue citations or violations with no opportunity to cure and no meaningful opportunity to be heard. Then,

---

[2] *Zaatari v. City of Austin*, 615 S.W.3d 172, 190-92 (Tex. App.—Austin 2019, pet. denied).

Defendants use non-curable citations as a basis for suspending homeowner rights to lease short term under a "three-strike" rule—leading to absolute revocation of a homeowner's ability to lease for short terms after two suspensions.

While Plaintiffs do not challenge some amount of reasonable regulation, the ordinance's provisions on its face and as applied by Defendants fall well beyond reason. As applied, the 2026 Ordinance is difficult if not impossible to follow, and its requirements are inconsistently applied at the whims of City employees. City officials have unbridled discretion in determining who does and does not receive STR licenses. Defendants have slashed occupancy limits without any rational basis. They scrape the internet looking for advertising violations, then accumulate those violations in lists given to police officers with instructions to issue citations. Defendants' unjustified denials, delays, canceled applications, fines, criminal misdemeanor penalties, reductions in occupancy, and suspension of STR licenses have caused Plaintiffs significant and irreparable harm. Their actions aim to force homeowners to stop renting for short terms, and may force some to sell because they cannot offset the costs of vacation home ownership with rental income.

Plaintiffs therefore ask the Court to preliminarily enjoin Defendants' enforcement of the 2026 Ordinance pending the outcome of this case, as courts have done in Tiki Island,[3]

---

[3] *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587-88 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (affirming timely appealed temporary injunction of STR ordinance).

Dallas,[4] and Hollywood Park.[5] Plaintiffs are likely to succeed on their claims, as the 2026

Ordinance:

(1) is an **unconstitutional retroactive law** under Article 1, Section 16 of the Texas Constitution, as it provides for no grandfathering of prior use and applies against homeowners who have operated STRs for decades without regulation;

(2) violates state and federal **procedural due process guarantees** on a facial and as-applied basis by providing no notice, hearing, or cure periods for many violations, allowing for the suspension and revocation of STR licenses without any meaningful opportunity to be heard;

(3) violates the fundamental right to **equal protection** by treating similarly situated Jamaica Beach homeowners differently, as those who lease for 30 days or more have no regulations may lease without restrictions while STR homeowners cannot; and

(4) violates state and federal **substantive due process** guarantees by imposing restrictions on private property rights that have no rational relationship to a legitimate government interest and are unduly burdensome given the government interest at stake, and by giving unbridled discretion to City officials to interpret and enforce restrictions at their discretion.[6]

There is no rational relationship between the 2026 Ordinance's stated goals and its

overly restrictive provisions. As Defendants admit, the City has other ordinances to address

concerns about noise, nuisance, trash, and safety (*see* Dkt. 12 at 12 ¶ 119; *see also* **Exhibit**

**D**), there is zero evidence that the duration of a tenant's stay in Jamaica Beach causes more

---

[4] *City of Dall. v. Dall. Short-Term Rental All.*, No. 05-23-01309-CV, 2025 Tex. App. LEXIS 5127, at *9 (Tex. App.—Dallas July 18, 2025, pet. filed) (affirming temporary injunction banning City from enforcing STR ordinances).

[5] *Browning v. Town of Hollywood Park*, No. SA-23-CV-01485-XR, 2023 WL 9503457, 2023 U.S. Dist. LEXIS 234886, at *4-5 (W.D. Tex. Dec. 22, 2023) (granting preliminary injunction of STR ordinance enforcement).

[6] *See Zaatari*, 615 S.W.3d at 190-92 (retroactivity); *Jabary v. City of Allen*, 547 F. App'x 600, 606 (5th Cir. 2013) (Procedural Due Process); *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 354 (5th Cir. 2025) (Equal Protection); *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 86 (Tex. 2015) (substantive due process); *Spann v. Dallas*, 235 S.W. 513 (Tex. 1921) (unbridled discretion); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998).

harm than a tenant staying for 30 days or more, and Jamaica Beach has always been a family vacation destination—the very epitome of residential STR use.

Because Plaintiffs have suffered and are likely to suffer the unconstitutional restriction of their property rights, and the balance of equities lies in Plaintiffs' favor because it is in the public interest to allow homeowners to use their property without unconstitutional restrictions, Plaintiffs ask that the Court consider all evidence before it, including testimony presented at the hearing on this Motion, and enjoin enforcement of the 2026 Ordinance pending the outcome of this case.

## NATURE AND STAGE OF PROCEEDING

This civil rights lawsuit challenges Defendants' denial of longstanding property rights and the implementation of a government scheme to impair and deprive Plaintiffs' rights in violation of the United States and Texas Constitutions. Plaintiffs filed their Original Complaint on February 4, 2026. Defendants answered on February 27, 2026. Dkt. 12. Plaintiffs seek a preliminary injunction to prevent further harm by the enforcement of the City's unconstitutional STR restrictions pending a full trial on the merits.

## ISSUE TO BE RULED UPON AND STANDARD OF REVIEW

Plaintiffs ask the Court to enjoin Defendants from enforcing the 2026 Ordinance. To receive a preliminary injunction, Plaintiffs must demonstrate:

(1) a substantial likelihood of success on the merits;
(2) a substantial threat of irreparable harm if the injunction is not granted;
(3) that the threatened injury outweighs any harm that may result from the injunction to the non-movants; and
(4) that the injunction will not undermine the public interest.

*Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). A stringent standard

applies when deciding whether to grant a preliminary injunction, and a district court's decision is reviewed for an abuse of discretion. *See Janvey v. Alguire*, 647 F.3d 585, 591-92 (5th Cir. 2011). Findings of fact will not be disturbed unless clearly erroneous. *Id.*

## FACTUAL BACKGROUND

Plaintiffs incorporate the facts from their Original Complaint (Dkt. 1), and recount them here for reference.

### A. The City began imposing STR regulations in 2021, and Defendants have increasingly restricted STRs since that time.

Through a series of ordinances passed between June 2021 and January 2026, the City has increased its control over STRs in Jamaica Beach, all with the aim of reducing and eliminating homeowners' ability to lease their property for periods of 29 days or less. The City has furthered this goal by imposing unjustified denials, delays, fines, criminal misdemeanor penalties, and revocations of homeowner STR licenses. Following are the City's various, increasingly restrictive ordinances from 2021 to today:

1. 2021-06 (establishing STR regulations and permitting requirements)
2. 2023-11 (amending 2021 ordinance)
3. 2023-13 (amending 2023 ordinance re: posting notices)
4. 2023-14 (amending 2023 ordinance re: posting notices)
5. 2023-15 (amending 2023 ordinance re: requiring permission for City inspections)
6. 2023-16 (amending 2023 ordinance re: maximum occupancy requirements based on *lesser* of two persons per bedroom plus 4 people, or Galveston County Appraisal District's ("GCAD") living area square footage divided by 150 square feet, rounded up)
7. 2024-09 (amending 2023 ordinance requiring license numbers in advertisements)
8. 2025-03 (amending 2023 ordinances)
9. 2026-01 (repealing and replacing 2025 ordinance).

*See* **Exhibit D1–D9**.

Starting in 2021, the City began regulating residential leasing for the first time. It began classifying leases differently according to how long a home was leased out. It enacted ordinances for long-term leases and STRs, differentiating between them at the 30-day mark. *Compare* City of Jamaica Beach, Ordinance No. 2021-07 (Aug. 16, 2021) *with* **Exhibit E-1**.[7] For long-term rentals, homeowners had to notify the City and receive a return approval, which served as "registration." For STRs, the City created a licensing scheme requiring an application, a $50 fee, and the City's issuance of STR "registration number" before a homeowner could lease short term. It also required that a "local contact person" respond "within 60 minutes of being notified of concerns or requests for assistance." This was the first time homeowners in Jamaica Beach needed government permission to lease out their homes, and it applied to the kind of leasing which had been occurring at Jamaica Beach for decades without regulation.[8]

In 2023, the City ratcheted up its control, and began prosecuting owners for violations. Between October and December 2023, the City issued Ordinance Nos. 2023-11, 2023-13, 2023-14, 2023-15, and 2023-16 imposing a slew of new obligations, including a $250 annual fee for licenses, maximum occupancy limits, new posting requirements, and requiring government inspections of homes "to determine accuracy of the short-term rental application information." Defendants defined "Qualified Bedroom" to mean the number of bedrooms listed by the GCAD as living area square footage—with no legal basis or

---

[7] Plaintiffs ask that the Court take judicial notice of Exhibits A–E under Federal Rule of Evidence 201.

[8] In 1997, the City began taxing "house" and "tourist home" rentals of less than 30 days, but did not otherwise restrict or regulate them.

precedent. The City even **criminalized** violations, imposing fines and penalties. **Exhibit E-2** at 6). The City continued its prior requirement that a local contact person be available 24 hours a day, and respond within 60 minutes of being notified of concerns or complaints. Finally, it afforded City Council discretion to revoke a license for any violation, effectively affording owners no due process. In sum, with the 2023 ordinance, a short-term stay in a home became a status crime and invoked the heavy hand of government monitoring, control, and surveillance of ordinary people living in private homes.

In 2024, the City subjected STR "platforms" (such as Airbnb and VRBO) to criminal penalties for omitting certain information or not collecting occupancy taxes.

The City's 2025 ordinance took City efforts to undermine STRs to a new level by:

a. authorizing the City to seek a warrant if an owner did not voluntarily agree to allow an inspection of a home, based on nothing more than the City's desire "to determine accuracy" of the owner's STR license application;

b. broadening the kinds of violations that could result in suspension beyond violations of the STR ordinance itself, including noise and disorderly conduct;

c. allowing permanent revocation of an owner's "right to Short-Term rent their property following 2 suspensions"; and

d. further tightening occupancy by re-defining "Qualified Bedroom" so that rooms long used as bedrooms to determine occupancy were now excluded for STRs, even though long-term rentals and owner-occupied homes could use them.[9]

The City made unsupported statements that STRs have "negative ancillary impacts" on "surrounding properties and permanent residents," without any data, studies, or evidence that a short duration of tenant stay results in more or different harms of any kind than any other form of residential home occupancy, including leasing for more than 30 days.

---

[9] This disparate treatment alone shows there is no health or safety risk associated with this provision.

The City passed its most restrictive ordinance in January 2026. **Exhibit C**. One of its most egregious provisions is that, under the ordinance, a tenant or owner are presumed guilty of a crime upon the mere issuance of a criminal citation, code violation, lapse in payment of fees or taxes, failure to maintain $1,000,000 in general liability insurance, or violation of the 2026 Ordinance itself. The 2025 Ordinance recites that:

> …the City Council finds that an enforcement system-using criminal citations for guest conduct and administrative enforcement for owner and operator obligations, operating independently of criminal convictions under Texas Local Government Code §54.001-provides a fair and effective mechanism to achieve timely compliance and protect neighborhoods; and

…

> L. Criminal Penalties: Criminal enforcement for violations of this Ordinance or any other applicable City ordinance remains available under Texas Local Government Code §54.001,[][10] and criminal penalties shall be prosecuted as Class C misdemeanors as provided by law.

**Exhibit C** at 1, 16. The 2026 Ordinance makes homeowners strictly liable for guest violations, meaning a guest violation is deemed a violation by the owner, and can be used to suspend or, after two suspensions, completely revoke a homeowner's ability to lease for short terms. This is "regardless of prior knowledge, notice, intent, or the outcome of any criminal proceeding." **Exhibit C** at art 5 ¶ F(1). Homeowners' "[l]ack of knowledge or failure to compel guest compliance (including court appearances)" are not allowed as defenses under the 2026 Ordinance. *Id*. If a guest fails to appear in court for a citation, the 2026 Ordinance allows that nonappearance may "serve as independent administrative evidence supporting the original" violation. **Exhibit C** at ¶ F(3). The 2026 Ordinance then

---

[10] Section 54.001 provides that a City's governing body "may enforce each rule, ordinance, or police regulation…and may punish a violation"; it also sets fine or penalty limits. Tex. Loc. Gov't Code § 54.001.

makes a written notice of citation—which can be issued to a tenant, guest, or property manager—a basis for sustaining a verified violation and ultimate suspension of an STR license, even if the underlying citation is dismissed or acquitted, and expressly provides that homeowners **need not receive any notice before the City records a guest citation as a verified violation**. There is no cure period whatsoever for a laundry list of purported violations. The 2026 Ordinance also thwarts constitutional search-and-seizure protection by granting the City the authority to search homes upon demand and, if a homeowner refuses to consent to an inspection, gives the City authority to seek a warrant to inspect under article 18.05 of the Texas Code of Criminal Procedure. **Exhibit** C at 7 ¶ 15.[11]

The 2026 Ordinance also requires homeowners to present "[p]roof of $1,000,000 general liability insurance." *Id*. Defendants, however, do not accept group liability insurance provided by third parties such as Airbnb or VRBO, instead forcing homeowners to obtain a separate $1 million policy—essentially requiring **$2 million** in liability coverage. This is no mere inconvenience, it is an effective bar for some homeowners to obtain a new or renewed STR license. Defendants require homeowners to reapply every year, and suspend STR licenses as of January 31st.

Defendants do all this with no local empirical data, studies, or evidence that the status of a tenant's duration of occupancy in a private home has any bearing on harm to the community.

---

[11] Section 18.05(b) does not allow a warrant to issue without probable cause that a fire or health hazard, or an unsafe building condition actually exists. Tex. Code Crim. P. § 18.005(b).

### B. Impacts upon Plaintiffs

Plaintiffs own homes in the City. They have invested in, improved, and furnished their homes to rent them out for short terms for residential use, advertising on sites like VRBO and AirBnb. Plaintiffs all purchased their homes before the 2026 ordinance, and most purchased before the 2025 ordinance was passed. Many purchased homes already used as STRs, and for many, they purchased based on anticipated STR income potential. Most homeowners would never have bought and invested in these homes had they known STR's would later be banned, or effectively banned through regulations.

Not only is rental income significantly higher for stays under 30 days, but STRs give Plaintiffs more time and opportunity to enjoy their homes in-between rentals. Tenants get sole and exclusive possession apart from usual and typical landlord reentry rights for repairs and emergencies.

The facts established by Plaintiffs' declarations are summarized here. Ms. Tabbert has owned her home since 2010, and has engaged in STRs since that time, long before the City began enacting its ever-more-restrictive STR ordinances. **Exhibit F.** Under the 2026 ordinance, her occupancy has been slashed, she cannot advertise or lease her first-floor living area, and Defendants have withheld issuance of her 2026 STR license entirely, despite Defendant Josselet verbally telling her she was approved.

Ms. Garza-Florez started leasing her home short term in 2019, with an occupancy of 15. In 2026, Josselet arbitrarily reduced her occupancy to 10. **Exhibit G.** Garza-Florez is also prevented from using or advertising her downstairs living area, while homeowners who rent long term or live full time in their homes have no restrictions on downstairs use.

This is true not only for STR tenants, but even her family members are accosted by City residents about why they are visiting.

Mr. Singleton has had his application for an STR license pending since *October of 2024.* **Exhibit H.** Defendants have denied, delayed, and imposed compounded violations on him in a circular effort to prevent him from ever obtaining an STR license. Despite repeated assurances from Josselet that, once he paid a fee or fine, his license would be approved, she has continually withheld approval and has, instead, wracked up multiple citations and charges against him, all while he has attempted to comply with Defendants' ever-increasing and constantly shifting requirements.

Mr. Schmidt received three citations for advertising violations on **three consecutive days**. He received no notice of the citations for over a week after the first one issued. **Exhibit I.** Had the City provided adequate notice and opportunity to be heard when it issued the first citation, Mr. Schmidt would have been able to correct any advertising issues without further citations. Since it did not, Mr. Schmidt not only paid an additional $1,743 in fines and penalties and, despite appealing to City Council., his listing has been suspended for six months.

## ARGUMENT

This case implicates deep and fundamental liberty interests. An individual's ability to decide how to allocate land use lies at the heart of free enterprise and personal liberty.

**I.     Plaintiffs are likely to succeed on the merits of their claims.**

### A. The 2026 Ordinance is unconstitutionally retroactive.

The Texas Constitution provides that "[n]o bill of attainder, ex post facto law,

retroactive law, or any other law impairing the obligation of contracts shall be made." Tex. Const. art. I, § 16. It therefore expressly prohibits the creation of retroactive laws. *See id*. The prohibition has two objectives: to protect "reasonable, settled expectations" (i.e., "the rules should not change after the game has been played") and to protect against abuses of legislative power. *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 139 (Tex. 2010) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–266 (1994))

"A retroactive law is one that extends to matters that occurred in the past." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014). In determining whether a retroactive law is unconstitutional, courts consider: "(1) the nature and strength of the public interest served by the statute; (2) the nature of the prior right impaired by the statute; and (3) the extent of the impairment." *Anding v. City of Austin*, No. 1:22-CV-01039-DAE, 2023 WL 4921530, at *10 (W.D. Tex. Aug. 1, 2023). A plaintiff must show that a settled and reasonable expectation of a constitutional right has been impacted. *Id.* The City's 2026 Ordinance is unconstitutionally retroactive under the Texas Constitution for the reasons set out in *Zaatari*, *Muns*, and *Anding*.[12]

### i. For the retroactive 2026 Ordinance to survive, the City must establish a compelling public interest—it cannot.

The City must demonstrate a "compelling public interest" to survive a retroactivity challenge. *Robinson*, 335 S.W.3d at 146. But the City has no findings, local data, evidence,

---

[12] *See Zaatari*, 615 S.W.3d at 188-91; *City of Grapevine*, 651 S.W.3d at 345; *Anding v. City of Austin*, No. 1:22-CV-01039-DAE, 2023 WL 4921530, at *10, 2023 U.S. Dist. LEXIS 132883, at *24 (W.D. Tex. Aug. 1, 2023) (STR ordinance unconstitutionally retroactive); *Browning*, 2023 WL 9503457, 2023 U.S. Dist. LEXIS 234886 at *4 (PI granted on retroactivity grounds).

studies, or anything concrete comparing harms from STRs to harms from longer-term occupancies.

The nature and strength of the public interest behind the ordinance is therefore minimal at best. As Defendants have admitted in their Answer, the City has other ordinances to address any nuisance, noise, parking, trash, emergency vehicle access, or other public health, safety, and welfare concerns. Dkt. 12. And of course, criminal activity is forbidden by numerous ordinances and statutes. Nor can citizen opposition constitute a valid rationale for the City's restrictive ordinances. "A lawful and ordinary use of property is not to be prohibited because repugnant to the sentiments of a particular class." *Spann v. Dallas*, 235 S.W. 513, 517 (Tex. 1921). Commentary at city council meetings or vague expressions of support for an STR ordinance provides no evidence of a compelling governmental interest in banning people from staying in homes for less than 30 days. The 2026 Ordinance therefore advances no compelling public interest.

### ii. Plaintiffs' rights are settled, vested, and fundamental.

By comparison, the nature of the prior right impaired is fundamental, established, and clear. In Jamaica Beach, homeowners have leased their houses as vacation homes for short terms for decades. For over 100 years, Texas has recognized that fee simple ownership includes "the right to lease it to others." *See Calcasieu Lumber Co. v. Harris*, 13 S.W. 453, 454 (Tex. 1890); *see also Terrace v. Thompson*, 263 U.S. 197, 215 (1923) ("essential attributes of property" include "the right to use, lease[,] and dispose of it for lawful purposes"). In Texas, private land ownership and its intrinsic privileges are natural rights predating constitutions. *Zaatari v. City of Austin*, 615 S.W.3d 172, 200 (Tex. App.—

Austin 2019, pet. denied) (quoting *Spann*, 235 S.W. at 517).

This rich legal history explains why, in a case nearly identical to this one, the Fort Worth Court of Appeals held that leasing is a fundamental, vested, and settled right. *City of Grapevine v. Muns*, 651 S.W.3d 317, 344 & 346 (Tex. App.—Fort Worth 2021, pet. denied); *see also City of Dall. v. Dall. Short-Term Rental All.*, No. 05-23-01309-CV, 2025 Tex. App. LEXIS 5127, at *9 (Tex. App.—Dallas July 18, 2025, pet. filed) (same). Short-term leasing is just residential leasing, so long as tenants do what tenants usually do in a home. *See Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 291 n.14, 292 (Tex. 2018); *see also JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 185 (Tex. 2022).

The First Court of Appeals recently issued an opinion on February 26, 2026 disagreeing with *Grapevine*'s statement that property owners have a fundamental right to lease as one of their property-rights "sticks"—that property owners have a fundamental, vested right *in the properties themselves*. *See City of Dickinson v. Crystal Cruise Invs., LLC*, No. 01-24-00684-CV, 2026 Tex. App. LEXIS 1833, at *15 (Tex. App.—Houston [1st Dist.] Feb. 26, 2026, no pet. h.). The First Court cited cases that discuss whether parties have vested rights in a permit or zoning classification. *See id.* (citing *City of La Marque v. Braskey*, 216 S.W.3d 861, 863-64 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) discussing the state-licensed use of property as a cat shelter, and *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778, 16 Tex. Sup. Ct. J. 26 (Tex. 1972), discussing city's power to terminate existing property uses that do not conform to zoning regulations, including a 25-year **recoupment period** to allow property owner to recover investments). This

distinction was addressed in *Grapevine. See City of Grapevine*, 651 S.W.3d at 338 ("[a]lthough a property owner generally has no vested right to use his property in a certain way without restriction, the Homeowners do have a property interest in the properties themselves") (citations omitted); *see also Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (STR ban that did not grandfather plaintiff's use foreclosed her existing investment use with no avenue for recoupment). *Benners* in particular discusses the test for a city's exercise of its police power when terminating a pre-existing land use with allowance for recoupment, stating that such laws are "subject to the same tests of validity as other legislative acts, i.e., whether it is reasonable and bears a fair relationship to the object sought to be obtained." *Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972). One case examined by *Benners* included the cessation of heavy industrial use (an automobile wrecking yard) in a light industrial district—there, the Corpus Christi Court of Appeals held the municipal ordinance unconstitutional as applied, because the "nonconforming use did not appear harmful in any respect to public health, safety, morals or welfare…." *Id*. (citing *City of Corpus Christi v. Allen*, 254 S.W.2d 759 (Tex. 1953)). In the recent *Crystal Cruise* case, the First Court of Appeals conflated settled and vested rights by holding an owner had no right to operate an STR because the city's rental ordinance was in effect before the plaintiff purchased its property. *Crystal Cruise*, 2026 Tex. App. LEXIS 1833 at *15.

Plaintiffs Tabbert, Rana and Garza-Florez each owned their homes in Jamaica Beach before the City ever began regulating STRs, and have a pre-existing right to rent their homes short term. The 2026 Ordinance is unconstitutionally retroactive as applied to all

individual Plaintiffs, as they all purchased their homes before its adoption. Additionally, the City's STR regulations are unconstitutionally retroactive for members of the Association who obtained their properties and engaged in STRs before the City adopted, variously, the 2021, 2023, 2025, and 2026 Ordinances. For owners who bought homes before the 2023 Ordinance—such as Singleton and the Schmidts—they had a settled right to rent out homes in Jamaica Beach for short terms with virtually no restrictions since the City's first short-term/long-term classification scheme in 2021, which required only a few basic objective requirements. Even Association members who bought their homes before the 2025 Ordinance were free from the specter of being denied the settled right to set lease terms. For example, the City's new maximum occupancy limits created an unconstitutionally retroactive restriction on the use of habitable space within homes.

The City has collected HOT from STRs since 1997, and its prior allowance of STRs and collection of millions of tax dollars from STR owners (and the State's implicit provision for STRs under the Property Code and Tax Code solely relating to hotel occupancy taxes) serve only to confirm the existence of Plaintiffs' vested rights. *See Draper v. City of Arlington*, 629 S.W.3d 777, 777 (Tex. App.—Fort Worth 2021, pet. denied). Just because the State allows municipalities to collect hotel taxes on STRs for purposes of the tax statutes does not mean that STRs lose their residential character, or that homeowners lose their fundamental, constitutional right to lease—even for short terms. [13]

---

[13] The First Court of Appeals' recent *Crystal Cruise* opinion cited Texas statutes applying hotel occupancy taxes to STRs, wrongly concluding that a tax statute somehow amounts to legislative pronouncement that STRs "are not treated as wholly residential in character." *Crystal Cruise*, 2026 Tex. App. LEXIS 1833 at *21-22. But STRs in Texas are residential in character. *See Tarr*, 556 S.W.3d at 291.

But "[u]nder *Tarr*, a short-term rental—even one subject to hotel occupancy taxes—is not a hotel use if the owner conducts no business onsite." *JBrice Holdings*, 644 S.W.3d at 186 n.30 (citing *Tarr*, 556 S.W.3d at 292 & n.15). Because the internet has given millions of Texas landowners the means to reach a global market for tenants, people worldwide can experience life in Texas towns and cities, even if only for a short time. Many fall in love with Jamaica Beach and move there, and bring friends and families. Meantime, the City has generated millions in STR tax revenue.

### iii.   Extent of the Impairment

As discussed above, the Ordinance's impairment upon essential and settled property rights is substantial—one of the core rights of property ownership, leasing, is being severely impacted, if not effectively deprived. Plaintiffs purchased their Jamaica Beach homes, improved and readied them for STRs. They had reasonable, settled expectations of being able to continue to rent their home for short terms. In *Anding*, the court rejected a city's contention that an existing permit requirement defeated settled expectations, holding that the property owners' purchase of their homes at a time when owners could obtain a license as of right was dispositive: "[T]here is a difference between knowing that the City requires a permit for short-term renting and having notice that the City may altogether eliminate the 'historically…allowable use' of residential STRs." *Anding*, 2023 WL 4921530, at *9. That reasoning applies here, where property rights have become precarious and have been reduced and subjected to constant change.

If not enjoined by this Court, the City will continue to enforce the 2026 Ordinance in violation of the rights of Plaintiffs and Association members.

### B. The City has no interest, or a mere nominal interest, in preventing STRs by overregulating them.

The right to own property includes the right to lease—for STRs, as long as the lease is for a residential purpose, owners may choose to lease to whomever they want, for however long they choose. *See Zaatari*, 615 S.W.3d at 190-91 (the right "to lease one's property on a short-term basis" was part of the "metaphorical bundle" of "'sticks'" of "property ownership"). Governments cannot restrict these rights unless the restriction is rationally related to a legitimate government interest.[14] STRs are just an ordinary residential use. There is no evidence that they produce more harm than other residential uses. Traditional nuisance and misconduct behaviors are not more prevalent with STRs, and such concerns—if valid—can be addressed by enforcement of traditional misconduct-abatement ordinances of the type the City already has in place. *See* **Exhibits D1–D6**. The mere durational distinction between STRs and other residential uses is meaningless as a metric of harm and does not justify the impairment of a well-established property right.

Courts will also consider relevant evidence in determining whether a constitutional violation has occurred, and will not simply accept the government's claim that a property use is harmful or incompatible with the area. *See Marfil v. City of New Braunfels*, *Texas*, 70 F.4th 893 (5th Cir. 2023) (summary published opinion reversing the dismissal of substantive due process claims challenging STR ordinance). As in *Zaatari*, the 2026 Ordinance has nothing to advance any legitimate City interest that is not already covered by other ordinances or laws. *See Zaatari*, 615 S.W.3d at 191. As Defendants admit, the City

[14] *See Patel*, 469 S.W.3d at 88 (rational basis review).

already has ordinances to address nuisances, noise complaints, parking and trash issues. There are even regulations over what color garbage bags homeowners must leave inside a trash can on garbage day. *See* **Exhibit D1-D5**. White garbage bags visible from the street earn residents citations. *See* **Exhibit D4** at Ord. 2023-07, Sct. 4(A) ("All white trash bags shall be placed in receptacles with tight fitting lids so that no white trash bag is visible"). There is also an emergency management program to ensure emergency services can, among other things, access all areas of the City. *See* **Exhibit D6**. Despite these ordinances, the City has made its STR restrictions progressively more onerous as a pretext to impair homeowners' ability to rent their homes for short terms, for no other reason than public opposition to STRs and irrational reasoning, without data or evidence in support. The effect on settled property rights is clear—Plaintiffs cannot lease their homes short-term without arbitrary and capricious government interference. As a result of Defendants' unbridled discretion and unnecessary economic limitations, some homeowners have been denied the right to lease short term entirely. Defendants' actions plainly have a substantial impact on Plaintiffs' rights.

### C.  Procedural Due Process

As part of the bundle of rights that come with fee ownership, Plaintiffs and Association members have protected property and liberty interests in leasing and, relatedly, in determining to whom and how long to lease, and whom to include and whom to exclude from their land.

The Fifth and Fourteenth Amendments to the U.S. Constitution require a fair hearing before an individual can be deprived of a property interest. *Mathews v. Eldridge*, 424 U.S.

319, 333 (1976). Such procedural due process rules are meant to protect persons from the mistaken or unjustified deprivation of life, liberty, or property. Where historical, fundamental, natural property rights such as leasing are stake, an evidentiary hearing equivalent to a court proceeding is required.

The Texas Constitution goes even further than its federal counterpart by including "an explicit Separation of Powers provision to curb overreaching and to spur rival branches to guard their prerogatives." *In re State Bd. for Educator Certification*, 452 S.W.3d 802, 808 n.39 (Tex. 2014) (orig. proceeding). The fragmentation of Texas's executive branch attenuates the accountability of municipalities, so holding cities to account when taking away people's property rights requires more stringent procedures than under the U.S. Constitution. *See City of Dall. v. Stewart*, 361 S.W.3d 562, 573 (Tex. 2012).

Thus, in Texas, the constitutional guarantee of procedural due course of law requires the government, at minimum, to provide notice that it is depriving a citizen of a liberty or property interest as well as "an opportunity [for the citizen] to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929-30 (Tex. 1995). In the hearing, the citizen's challenge to the deprivation must be determined "according to law." *Freeman v. Ortiz*, 106 Tex. 1, 2, 153 S.W. 304, 304 (1913). In this way, Texas' due course of law guarantee empowers courts to resolve disputes about whether officials are legitimately exercising governmental power within the democratically established limits of the law.

The 2026 Ordinance deprives property owners of fair procedures when they exercise their natural, fundamental, historical right to lease for less than 30 days. Among other

things,

    a. the 2026 Ordinance creates a blizzard of possible violations that attach without notice or a meaningful opportunity to be heard, and trigger the possible suspension or revocation of an owner's right to lease for less than 30 days;

    b. even for harms like nuisances or noise, Defendants maintain that the mere issuance of a citation—without any hearing—results in owners being **presumed guilty** of causing a nuisance and given "strikes" against their continuing ability to rent for short terms;

    c. the 2026 Ordinance allows for suspension or revocation if, for example, the City claims not to have received records of HOT payments; and

    d. owners are barred from exercising their property rights and liberty interests while administrative delays lag on, and in the meantime may suffer additional technical violations, compounding the City's case for suspending or revoking owners' rights.

Schmidt's three consecutive days of advertising citations were used to suspend his STR license for six months—providing him no due process before the City took away fundamental property rights. The 2026 Ordinance's unconstitutional provisions and lack of procedural protections on registration and the violation process are inseparable. Accordingly, the 2026 Ordinance violates procedural due process owing to Plaintiffs and Association members under the U.S. and Texas Constitutions. *See City of Grapevine*, 651 S.W.3d at 346-47 (even if homeowners operating STRs in residential areas do not have a vested right under a zoning ordinance to use their homes as STRs they do "have a fundamental leasing right arising from their property ownership"); *see also City of Grapevine v. Muns*, 671 S.W.3d 675 (Tex. 2023) (Young, J., concurring in denial of review).

**D. The 2026 Ordinance imposes disparate treatment of similarly situated homeowners without a real or substantial relationship to a legitimate government interest.**

The Fourteenth Amendment and article 1, section 3 of the Texas Constitution guarantee Texas homeowners equal protection under the law. Disparate treatment of similarly situated individuals must bear a real and substantial relationship to a legitimate government interest. Courts first look to whether "similarly situated individuals" suffer disparate treatment, and next to whether there is a rational relationship between the treatment and a legitimate government interest. *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 354 (5th Cir. 2025) (*Hignell II*).

As to health and safety concerns, all Jamaica Beach homeowners are similarly situated, regardless of whether they lease for long or short terms. *Id*. In *Hignell-Stark*, the city prohibited corporate entities from leasing for short terms but allowed natural persons to do so. The Fifth Circuit held this violated constitutional equal treatment protections because a property owner and STR permit holder's status as a corporation or as an individual "does not change" their relationship to STR regulations. *Id*. Nor was there any rational relationship because the city's stated interests concerning the impact of STR tenants on the community had no connection whatsoever to whether homeowners own individually or incorporate. *Id*.

The 2026 Ordinance draws a strict distinction between rentals of 29 or fewer days and those for 30 days or more. Homeowners who lease for short terms are subjected to overwhelming regulation and occupancy limitations that homeowners who rent for 30 days or more are not. This leads to absurd results. One homeowner cannot lease her remodeled

first-floor living area, on which she pays taxes, for 29 days, while her neighbor can if he leases for 30 days or more. The STR homeowner is subject to criminal fines and substantial penalties if she advertises her downstairs living space, while the homeowner renting for 30 days or more has no such limitation, and is not surveilled and penalized for claimed errors or violations. Long-term lessors require no permit, are not subjected to inspection demands, are not repeatedly dragged into court. They are not forced to follow onerous and time-consuming application processes or pay costly fees and administrative penalties, and are not penalized for the full use of their homes; in fact, they are often allowed to openly and blatantly violate conditions imposed on STRs.

The 2026 Ordinance facially violates equal protection because there is no non-arbitrary reason this disparate treatment. Even to the extent an owner complies with the 2026 Ordinance, on an as-applied basis the right and ability of homeowners to rent for 29 days or less still gets revoked, suspended, or denied at the whims of City officials for claimed trivial, non-harmful offenses, or outright foot dragging by the City.

The City targets STR homeowners with claimed violations of trash ordinances, lighting requirements, fencing requirements, and setback regulations. The City has even refused to release official records for STR homeowners to use in municipal court as they defend against criminal citations.

Clearly, there is an enforced bias against STR homeowners in Jamaica Beach. City officials have practiced and enforced a differential exercise of official power against Plaintiffs. The arbitrary distinction drawn by the City between leases of differing terms does not meaningfully advance a legitimate government interest. Leasing for all durations

24

is the same so long as the tenants engage in the ordinary incidents of residential use and occupancy. Thus, there is no basis for drawing a line for purposes of restricting some leasing durations more onerously than others.

Since both short and long-term rentals are ordinary residential uses, Jamaica Beach homeowners of each kind are similarly situated in this one-square-mile municipality. There is no significant difference between the two that would justify disparate treatment, and the 2026 Ordinance violates Fourteenth Amendment Equal Protection (and therefore 42 U.S.C. § 1983); as well as Article 1, Section 3 of the Texas Constitution.

### E. The 2026 Ordinance arbitrarily violates Plaintiffs' state and federal rights to substantive due process.

The 2026 Ordinance results in the arbitrary deprivation of property rights in violation of the Fourteenth Amendment and Texas Constitution article 1, section 19. Both the state and federal constitutions prohibit restrictions on private property rights unless the restrictions are rationally related to a legitimate government interest. Texas goes further, prohibiting unduly burdensome regulation given the government interest at stake.

To maintain a state or federal substantive due process claim, a plaintiff must show not only a constitutionally protected right, but also that the denial of that right is not rationally related to a legitimate government interest. *See Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249-51 (5th Cir. 2000) (holding county had no rational reason to deny street access to an abutting property owner). To pursue an "as-applied challenge to an economic regulation" under Texas' section 19, substantive due course of law provision, a plaintiff must overcome the presumption that a challenged law is constitutional by showing the

"statute's purpose could not arguably be rationally related to a legitimate governmental interest" or that the statute's "actual, real world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). The 2026 Ordinance fails this test, as the record and evidence at the hearing on Plaintiffs' motion will clearly establish.

Ordinances must be based on clear objective criteria. In *Spann*, the Texas Supreme Court reviewed a building ordinance that did not provide rules or standards to govern building design standards, and gave the building inspector arbitrary and unbridled discretion to approve or deny designs. *Spann*, 235 S.W. at 517. This left 'the right to construct buildings up to the inspector's arbitrary discretion' and "render[]ed the ordinance void." *Id.* As the Court explained in *Spann*, "[t]he very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another." *Id.*; *see also Hawkins v. Bleakly*, 243 U.S. 210, 214-16 (1917) (discussing claim of arbitrary and unbridled discretion inconsistent with due process of law).

A City that grants an individual unbridled discretion to grant or deny licenses or permits based on whatever they deem appropriate is unconstitutional. And an ordinance that grants officials authority to veto land-use licenses based on their own discretion is void. The 2026 Ordinance, and Defendants' actions, show both defects. Under *Spann* and other cases, a traditional use of private property cannot be prohibited solely based on the discretion of government officials or the subjective preferences of a segment of the local population. The 2026 Ordinance, however, is used to create an insurmountable restriction

depending on the whims, animus, or preferences of government officials, and is not rationally related to a legitimate government interest. Applications for new or renewed STR licenses or registrations take many weeks or months to process—or, in the Singletons' case, well over a year. In the meantime, City employees monitor and surveil homes to determine who is staying in homes and for how long, and search for reasons to deny or revoke licenses altogether. City officials enforce purported violations while homeowners try to comply with the City's ever-changing STR regulations and policies, punishing homeowners for continuing to rent for short terms after informing them that a license will issue.

The 2026 Ordinance allows City officials to revoke, suspend, or deny licenses without any cross check on their decision. Josselet and other City officials can stonewall, evade, or affirmatively thwart a homeowner's ability to lease short term—exactly what has occurred with some Association members. This unbridled discretion, standing alone, is sufficient to render the 2026 Ordinance facially unconstitutional. As applied, the unbridled discretion exercised within the City is aggravated by the fact that an overriding purpose of the technical requirements appears to be to provide a mechanism for government officials to veto new STRs and to shut down permitted STRs use based on alleged violations of vague, ever-changing, or hyper-technical rules. In the absence of any clear criteria for determining when to grant a license, overreliance on the actions of government officials, in practice, tramples the constitutional rights of STR homeowners.

The City has made the process of submitting applications onerous and unreasonable, creating confusing and conflicting standards and requirements. Not only does the City require owners to pay HOT and submit applications for STR licenses and renewals, the

City has made it intentionally confusing and almost impossible to do so by implementing multiple different systems and procedures from 2023 to 2024, causing owners to inadvertently miss paying taxes. Josselet has repeatedly informed homeowners that she cannot find receipts that have been submitted to the City multiple times. Defendants then used "missed payments" as a basis for denying or revoking STR licenses. Even if there was a rational basis for some of Defendants' actions, the restrictions imposed upon STR homeowners' rights is grossly disproportional to any impact the 2026 Ordinance may have on any legitimate government interest.

## II.    Plaintiffs are likely to suffer irreparable harm without a preliminary injunction pending trial.

As discussed above, Plaintiffs face significant, irreparable damage to their ability to use their property if no injunction should issue. Harm is considered irreparable if it cannot be remediated through monetary relief. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). As courts have recognized, sufficient irreparable injury exists when government Defendants will claim immunity from monetary damages. *See Browning*, 2023 WL 9503457, 2023 U.S. Dist. LEXIS 234886, at *4-5. Plaintiffs have therefore shown irreparable harm sufficient to support injunctive relief.

## III.    The balance of equities tip in Plaintiffs' favor, and a preliminary injunction is in the best interest of the public.

As discussed above, the balance of equities lies in Plaintiffs' favor because the requested injunction merely requires Defendants to stop violating Plaintiffs' protected constitutional property rights during the pendency of this suit, and Defendants are not prohibited from enforcing other non-STR ordinances to protect the health, welfare and

safety of the community. By contrast, Plaintiffs face significant and potentially permanent damage to their ability to use their property if no injunction should issue. It also is in the public interest to maintain Jamaica Beach homeowners' longstanding rights to utilize their homes without unconstitutional restrictions during the pendency of this matter. The equities therefore tip in favor of injunctive relief pending trial.

## CONCLUSION AND PRAYER

The 2026 Ordinance does nothing to safeguard public health, safety, welfare that is not already accomplished by existing laws and ordinances. It is unconstitutionally retroactive, violates procedural and substantive due process protections, and treats similarly situated Jamaica Beach homeowners differently without any rational basis. Its unconstitutional provisions—including registration requirements, violations, and enforcement—are not severable without wholly dismantling the ordinance. Plaintiffs' injuries greatly outweigh any claimed harm from continuing to enforce the 2026 Ordinance, and the balance of equities weigh in Plaintiffs' favor. Under Rule 65, Plaintiffs ask the Court to issue a preliminary injunction barring Defendants, directly or indirectly, from enforcing the 2026 Ordinance until this case concludes. This includes the issuance of citations, fines, punishments, charges, judgments, revocations, or suspensions. Plaintiffs ask that the Court waive any bond requirement, and pray for such other and further relief as the Court deems just and proper.

Respectfully submitted,

GREER HERZ & ADAMS LLP

By: /s/ Andrew J. Mytelka
     Andrew J. Mytelka
     Attorney-in-Charge
     Federal I.D. No. 11084
     State Bar No. 14767700
     amytelka@greerherz.com
     Angie Olalde
     Federal I.D. No. 690133
     State Bar No. 24049015
     aolalde@greerherz.com
     One Moody Plaza, 18th Floor
     Galveston, Texas 77550
     (409) 797-3200 (Telephone)
     (866) 422-1811 (Fax)

     -and-

     J. Patrick Sutton
     LAW OFFICE OF J. PATRICK SUTTON, PLLC
     State Bar No. 24058143
     1505 W. 6th Street
     Austin Texas 78703
     Tel. (512) 417-5903
     jpatricksutton@jpatricksuttonlaw.com

**COUNSEL FOR PLAINTIFFS**

### CERTIFICATE OF CONFERENCE

I hereby certify that, after conferring with counsel for Defendants on the relief sought in this motion, counsel indicated that Defendants are OPPOSED to the relief requested herein.

/s/ Andrew J. Mytelka

30

## **CERTIFICATE OF SERVICE**

I certify that on March 2, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record

*/s/ Andrew J. Mytelka*