IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **JAMAICA BEACH STR ASSOCIATION, DEBRA TABBERT, MARISOL GARZA-FLOREZ, PARAS RANA and VICTOR CARRION,** §§§§§§§ | | |
|     Plaintiffs, § | | |
| § | Civil Action No. 3:26-cv-00031 | |
| vs. §§ | | |
| **CITY OF JAMAICA BEACH, TEXAS, PAM JOSSELET in her official capacity as an employee of the City of Jamaica Beach, Texas,** §§§§§ | | |
|     Defendants. | | |

## **DECLARATION OF DEBRA TABBERT**

I, Debra Tabbert, pursuant to 28 U.S.C. § 1746, hereby certify as follows:

1. My name is Debra Tabbert, I am over 21 years of age, of sound mind, and am otherwise competent to make this Declaration.

2. The facts contained in this Declaration are within my personal knowledge and are true and correct.

3. I am a homeowner in Jamaica Beach, Texas ("Jamaica Beach"). Jamaica Beach is a beach community. Families have second homes, and homes they intend to retire in, in the City. They come on weekends and vacations to enjoy their properties.

4. My husband and I purchased our three-bedroom, two-bath home located at 16916 Beachcomber Drive in Jamaica Beach on June 30, 2010, and have owned it continuously since that date. The home was built in 1970; it has two bedrooms and one bath upstairs, and a downstairs bedroom and bath that were part of the home's original structure and use. The prior owners used the house as a short-term rental ("STR"), including the downstairs bedroom and bath.

5. When we purchased our home, we intended to use it for family vacations, and ultimately as a home to retire in. We spend approximately 6 months of the year at this home, and when we are not there, we rent it for short terms. We use the rental funds to help pay for, maintain, and improve our home.

6. We first started renting our Jamaica Beach house for short terms around March of 2011. At the time, the City of Jamaica Beach, Texas ("City") did not require an application or license to rent homes for 29 days or less. We rented our home for short terms with an occupancy of 12 people, including the downstairs area, which we furnished with bunk beds.

7. From 2011 until 2022, we rented our home for short terms, including our downstairs, without City interference or regulation.

8. Other than an ordinance requiring hotel occupancy tax payments, the City had no ordinances specifically regulating STRs until 2021. In 2021, the City adopted its first STR ordinance. In 2022, I timely submitted an application pursuant to the City's new ordinance, and was approved. I was licensed to lease for short terms to a reduced maximum of 10 people, and had no prohibition on leasing the downstairs bedroom.

9. The decision to disallow any downstairs reduced my home's rentable living area to 1,100 square feet from 1,440, and reduced the occupancy to a maximum of 8 people. At that time, the downstairs had been included for approximately 14 years in my home's rental as a third bedroom with capacity to sleep five.

10. I am a Director of the Jamaica Beach STR Association ("Association"). The Association was formed in 2025, when the City enacted its more stringent STR ordinance. STR homeowners across the City were frustrated with the City's anti-STR ordinance, and needed support in defending their property rights.

11. In 2026, I submitted an application to renew my STR license. I left messages for Pam Josselet when I did not hear about the status of my application. Josselet returned my calls on February 3, 2026. In that call, she stated she would approve my renewal but refused to allow my downstairs bedroom. When I asked about the basis for refusing to allow me to lease my downstairs, she repeatedly stated that she was just doing what she was told. She said she had a written directive, would not say who issued the directive, and that she would send it to me. Attached to this Declaration as Exhibit 1 is a true and correct copy of the correspondence Josselet sent to me, which is signed by Josselet herself.

12. Josselet also informed me that that the City would now require proof of a $1 million general liability insurance policy from STR homeowners, and that she will not accept insurance provided by a third-party vendor such as Airbnb or VRBO she gave no explanation or rational for this requirement. To my knowledge, there has never been a problem with use of a platform's group liability insurance policy.

13. On February 3, 2026, I submitted a written appeal of the City's and Josselet's decision. Attached to this Declaration as Exhibit 2 is a true and correct copy of the

2

appeal. I was not provided any procedure or method for appealing, so I printed a copy and took it to City Hall. I tried to submit the appeal to City Manager Gilbert Salas, but he would not discuss the appeal with me, and told me he could not help me. He handed my appeal back to me, and I left a copy with the City Secretary.

14. The City's and Josselet's actions have significantly impacted my ability to rent my home for short terms. Our home usually rents to families, often to families vacationing with grandparents, parents, and children. In my experience, it is much more difficult to lease a home advertised as a two bedroom, than to lease a three bedroom home. Due to the City's and Josselet's actions, I expect a significant decrease in bookings for 2026-2027.

15. As of the date of this Declaration, I have not received a 2026 STR license, and have not been informed about the status of my application, other than Josselet's verbal statement that it would be approved. I therefore do not have a current STR license number from the City to lease my home for short terms, and am exposed to potential criminal citation by the City, despite my timely compliance with all requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2026.

*Debra Tabbert*
Debra Tabbert

Case 3:26-cv-00031   Document 13-6   Filed 03/02/26 in TXSD   Page 4 of 10

# TABBERT EXHIBIT 1

3:04

  Back

**Pam Josselet**
To:           Cc:

# STR Registration Certificate of 16916 Beachcomber

Debra,

Here is the explanation you requested.

Ordinance No. 2026-01 does not rely on a separate FEMA document or a construction-year cutoff for Short-Term Rental registration. Instead, the ordinance itself defines what qualifies as compliant living area and a qualified bedroom for STR purposes.

Specifically:

- Compliant Living Area Square Footage is defined as living area located above the base flood elevation and compliant with FEMA National Flood Insurance Program (NFIP) standards (Article 1.D).

   

- A Qualified Bedroom must be located within that compliant living area above base flood elevation (Article 1.Q).
- These definitions apply uniformly to all Short-Term Rentals, regardless of the year the home was constructed.
- Ordinance 2026-01 does not contain a grandfather provision that allows bedrooms or living area below base flood elevation to be counted toward STR occupancy.

The City is not enforcing a separate FEMA regulation. Rather, FEMA compliance is used as a safety-based benchmark within the ordinance for determining bedroom count and maximum occupancy.

Based on the compliant living area above base flood elevation for 16916 Beachcomber, the approved bedroom count and maximum occupancy were calculated in accordance with the ordinance.

We hope this clarifies how the ordinance applies to your property.

Please let us know if you have any administrative questions regarding your STR registration.

Thank you.

Pam Josselet
City of Jamaica Beach
(409) 737-1142, Ext. 114

*City of Jamaica Beach Confidentiality Notice: The information contained in this email and any attachments is intended solely for the use of the individual or entity to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking any action in reliance upon this information by persons or entities other than the intended recipient is strictly prohibited. If you have received this email in error, please contact the sender and delete the material from any computer.*

   

# TABBERT EXHIBIT 2

February 3, 2026

Mr. Salas,

This letter serves as a formal administrative appeal of the City's determination that the downstairs living area of my home may not be recognized for short-term rental purposes based on current base flood elevation standards.

My home was constructed in 1970, prior to FEMA flood insurance rate maps and prior to the adoption of base flood elevation requirements. The downstairs area was built as part of the original structure and has continuously functioned as living space since its construction. No substantial improvement has occurred, the structure's base elevations have not been altered, and no trigger event under NFIP regulations has taken place.

Under established Texas land-use law, a structure that lawfully existed prior to a regulatory change is protected as a lawful pre-existing nonconforming use. Texas courts have consistently recognized that municipalities may not retroactively extinguish vested property rights absent clear statutory authority and due process protections. See, e.g., City of University Park v. Benners, 485 S.W.2d 773 (Tex. 1972); City of Corpus Christi v. Allen, 254 S.W.2d 759 (Tex. 1953). These cases affirm that an owner retains the right to continue an established lawful use even after new regulations are adopted.

Because the downstairs living area predates FEMA mapping and predates floodplain elevation standards, it constitutes a lawful pre-FIRM condition and a vested nonconforming use under Texas property law. NFIP standards regulate new construction and substantial improvements; they do not retroactively invalidate existing lawful occupancy absent a triggering event. The City's use of current base flood elevation as a licensing criterion for STR purposes cannot operate to extinguish a vested property right that has existed for decades.

I am not requesting expansion, reconstruction, or modification of the structure. I am asserting the right to continue the historically established use of the property. A licensing framework may regulate operations prospectively, but it may not retroactively redefine lawful square footage as unusable where no safety finding, improvement trigger, or due process mechanism has been invoked.

Accordingly, I request written confirmation that the downstairs living area is recognized as a lawful pre-FIRM nonconforming space and may continue to be used as historically occupied, including for STR purposes, absent substantial improvement or other triggering conditions under applicable floodplain regulations.

If the City maintains its position, please provide:

1. The specific ordinance provision relied upon,
2. The legal authority permitting extinguishment of a vested nonconforming use,
3. Any formal safety findings supporting the restriction, and
4. The procedures for further administrative and judicial appeal.

I prefer to resolve this matter cooperatively, but I must preserve my vested property rights under Texas law. I appreciate your prompt written response.

Sincerely,

[signature]

RECEIVED FEB 03 2026