**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JAMAICA BEACH STR ASSOCIATION, DEBRA TABBERT, MARISOL GARZA-FLOREZ, PARAS RANA, and VICTOR CARRION, | § § § § | |
| Plaintiffs, | § | Civil Action No. 3:26-cv-00031 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF JAMAICA BEACH, TEXAS and PAM JOSSELET in her OFFICIAL CAPACITY as an employee of the City of Jamica Beach, Texas, | § § § § | |
| Defendants. | § | |

**<u>DEFENDANTS' BRIEF IN OPPOSITION TO PRELIMINARY INJUNCTION</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendants City of Jamaica Beach, Texas ("Jamaica Beach" or the "City") and Pam Josselet, in her official capacity as an employee of the City of Jamaica Beach, Texas (collectively, "Defendants"), and file this Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction, and respectfully state and allege as follows.

## INTRODUCTION

Perhaps Jamaica Beach was "born" as a "weekend playground" in the 1950s, but "with grit and determination" it has transformed into a "community" composed of residents, families, and retirees.    While the City does experience seasonal tourism consistent with other coastal communities in Galveston County, it now exists primarily as a residential municipality, rather than a tourism-centered destination.

In recent years, the City has struggled with a rapid proliferation of short-term rentals ("STRs"), with their resulting nuisance conduct thrust into the residential community.  Plaintiffs profit from those STRs, and would prefer to do so without regulation, but that would be detrimental to the neighboring homeowners who live there, and are forced to live with invasive STR conduct when it does occur, which none of them asked for.

Jamaica Beach is zoned single-family residential.  But the City has not banned STRs. Instead, Jamaica Beach received and considered specific concerns from its residents, both those who support STRs and those who oppose STRs, and further considered and analyzed how other municipalities in Texas have regulated STRs, and then modeled their STR ordinances accordingly. In short, STRs are authorized, but they must be registered, adequately insured, advertised at a safe occupancy, represented by local operators to address immediate issues, supported by reporting and payment of occupancy tax, and subjected to City enforcement activity when necessary.  Such zoning and regulatory structure—established by the democratic process and reflective of the desires of the majority in the community—does not violate the federal or state constitutions.

Homeowners have no vested or settled right to disrupt their neighborhoods with loud, obnoxious, and sometimes dangerous parties.  Plaintiffs' motion would utterly eliminate all of Jamaica Beach's efforts to regulate STRs in their lived-in community, and it should be denied, as overbroad, unripe, non-meritorious, and harmful to the City's residents.

## ARGUMENT

A preliminary injunction is an "extraordinary remedy." This is a "stringent standard" under which the plaintiff "must" establish all four elements for such extraordinary relief. *See Allied Home Mortgage Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011). The Plaintiffs, here, fail to satisfy any of the four required elements.

### I.  Plaintiffs cannot show a substantial likelihood of success on the merits.

Plaintiffs are not likely to prevail in this lawsuit. First, regarding Plaintiffs' equal protection and substantive due process claims, the relevant case law is clear that it is rational to treat STRs differently from long-term residential use. Second, regarding Plaintiffs' procedural due process claim, if STR operators violate the Jamaica Beach Ordinance, they are entitled to both written notice and full opportunity to be heard, by an evidentiary hearing before the City Council, as well as by judicial review following that decision. Third, regarding Plaintiffs' retroactivity claim, there is no outright ban at issue, but merely continued refinements of the STR regulatory scheme, which conduct falls squarely within well-established municipal zoning authority.

### A.  The 2026 Ordinance does not violate homeowners' substantive due process or equal protection rights.

Contrary to Plaintiffs' claims and arguments, federal and state case law unanimously agree that restrictions on STRs satisfy the low bar of the rational basis test. If this Court were to enjoin the Ordinance as requested here, it would be the first federal court in the country to hold that a city cannot restrict STRs under the rational basis test.

Per the relevant case law, a court can readily acknowledge that the more short-term the resident, the less likely he is to engage in community betterment or to consider any adverse impacts from his visit on the surrounding neighborhood. Are long-term residents more invested in a neighborhood, and the cares and concerns of their next-door neighbors they see every week, than

are weekend visitors in town for a raucous bachelor party at an STR? Of course they are. Such common-sense legislative distinction does not require more than a momentary reflection to arrive at the conclusion that a city has a rational basis for distinguishing between long-term tenants and STRs. The equal protection and due process clauses do not require a court to ignore common sense and suspend disbelief when reviewing a city's legislative classifications. The standard is the opposite—whether there is any debatable basis for the legislative classification. If there is, then the classification survives rational-basis review.

Federal courts firmly hold that cities may regulate STRs.

Thirty-seven years ago, the Fifth Circuit affirmed the dismissal of rational-basis challenges to municipal restrictions on short-term use of residential property. *See Jackson Court Condos. v. City of New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989). In *Jackson*, the district court had upheld a municipal ban on time-sharing within certain residential districts at the summary judgment stage. *See Jackson Court Condos. v. City of New Orleans*, 665 F. Supp. 1235, 1236-37, 1254 (E.D. La. 1987). The city had concluded that a "characteristic of transients is that they do not have a sense of belonging to the neighborhood, and thus no neighborhood pride and commitment." *See id.* at 1238. The Fifth Circuit agreed, declaring, "Certainly the protection of residential [neighborhood] integrity is a legitimate objective of a zoning regulation." *See Jackson*, 874 F.2d at 1078. Also, in *Jackson*, the city had concluded that "transient attitudes can produce effects such as loudness, carelessness, littering and vandalism." *See Jackson*, 665 F. Supp. at 1238. Again, the Fifth Circuit agreed, declaring that the city's concern regarding an increase in noise, littering, and vandalism— which "might" be associated with transient users—"was a legitimate concern of the city and was [at least] debatable." *See Jackson*, 874 F.2d at 1078.

In 2022, the Fifth Circuit again approved the same legitimate bases relied on in *Jackson* to support municipal restrictions on STRs at residential properties.  *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 328-29 (5th Cir. 2022).  Due to a residency requirement, the court struck down a municipal ban on STRs under the dormant Commerce Clause, which applies a "virtually per se invalid" standard of review.[1]  *See id.* at 328.  However, in doing so, the court entered two holdings that confirmed STR restrictions which do not contain residency requirements (such as Jamaica Beach's) could easily satisfy the rational basis test.  First, the court approved multiple legitimate bases for STR regulations, holding that "preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character" are "legitimate local purposes."  *See id.*  Second, the court endorsed "an obvious and straightforward" method to meet those goals: "cap the share of housing units that can be used as STRs."  *See id.* at 329.

Also in 2022, the Third Circuit affirmed the dismissal of challenges to a municipal ban against STRs under the rational basis test.  *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 680-81 (3d Cir. 2022).  In that case, the district court approved the same three legitimate bases as the Fifth Circuit:  protecting long-term housing supply, reducing STRs' "deleterious effects" on residential neighborhoods, and protecting their residential character.  *See id.*  In light of these "legitimate state interests," the rational basis test was held to be "easily satisfied."  *See id.*

The only Circuit Court of Appeals that Plaintiffs cite is the recent Fifth Circuit opinion in the *Hignell-Stark* case.  However, the Fifth Circuit in that case *approved* of STR restrictions under the rational basis test.  *See Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 352-54 (5th Cir. 2025) (homeowners have no constitutional right to conduct unlicensed STR rentals where city

---

[1]  Jamaica Beach does *not* impose a residency requirement on STR owners.

requires STR licenses). As the Fifth Circuit expressly held, "Renting a home to transient guests is more analogous to a hotel operation than a traditional residential lease." *Id.* at 353. The court only struck down minor features of the STR regulations for which no rational basis could be found: (1) prohibiting the use of business entities to hold the STR permit and (2) prohibiting advertisements that include more than one property.[2] *Id.* at 354-59.

Federal district courts, too, unanimously hold that bans and regulations against STRs satisfy the low bar of the rational basis test. *See Hutto v. City of Rock Hill*, No. 0:23-cv-0970, 2025 U.S. Dist. LEXIS 79432, at *24-36 (D.S.C. Mar. 4, 2025); *Underwood v. Oriol*, 767 F. Supp. 3d 1084, 1091-92 (D. Nev. 2025); *Colo. Prop. Owners for Prop. Rts. v. Town of Breckenridge*, No. 23-cv-03171, 2024 U.S. Dist. LEXIS 120398, at *7-16 (D. Colo. July 9, 2024); *Villanueva v. Vill. of Volente*, No. 1:23-CV-1246, 2024 U.S. Dist. LEXIS 85735, at *44 (W.D. Tex. May 13, 2024); *Hignell v. City of New Orleans*, No. 19-13773, 2024 U.S. Dist. LEXIS 34030, at *39-42 (E.D. La. Feb. 28, 2024); *MDKC, LLC v. City of Kansas City*, No. 4:23-CV-395, 2023 U.S. Dist. LEXIS 176808, at *25-26 (W.D. Mo. Oct. 2, 2023); *Short Term Rental Alliance of San Diego v. City of San Diego*, No. 22CV1831, 2023 U.S. Dist. LEXIS 102156, at *30-33 (S.D. Cal. June 12, 2023); *Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 795-98 (W.D. Mich. 2022); *Selvaggi v. Borough of Point Pleasant Beach*, No. 22-00708, 2022 U.S. Dist. LEXIS 93746, at *15-17 (D.N.J. May 25, 2022); *Calvey v. Town Bd. of N. Elba*, No. 8:20-CV-711, 2021 U.S. Dist. LEXIS 56686, at *36-39 (N.D.N.Y. Mar. 25, 2021); *King v. City of Marion*, No. 3:19-CV-00207, 2020 U.S. Dist. LEXIS 16805, at *31 (E.D. Ark. Feb. 3, 2020); *Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 733-34 (E.D.N.Y. 2019); *Karol v. City of N.Y.*, 396 F. Supp. 3d 309,

---

[2] Jamaica Beach does *not* prohibit business entities nor the advertising of multiple properties.

322-23 (S.D.N.Y. 2019); *Murphy v. Walworth County*, 383 F. Supp. 3d 843, 850-51 (E.D. Wis. 2019).

Plaintiffs cite three Texas federal district court opinions in their Brief, but none support their due process and equal protection claims. The *Anding* and *Browning* cases involve retroactivity analyses (and thus are addressed below), not rational basis reviews (and thus are not relevant here). As for the *Marfil* case, Plaintiffs are correct that it was remanded to allow those plaintiffs to put on evidence, *see Marfil v. City of New Braunfels*, 70 F.4th 893, 893 (5th Cir. 2023), but Plaintiffs neglect to mention that the district court had no difficulty, on remand, again upholding the city's STR regulations, *see Marfil v. City of New Braunfels*, No. 6:20-cv-00248, 2025 U.S. Dist. LEXIS 6256, at *3-7 (W.D. Tex. Jan. 10, 2025).[3]

Just like the federal case law, state appellate courts agree that municipalities have rational bases to treat STRs differently from long-term residential uses.

To start, state courts outside of Texas routinely uphold STR restrictions as constitutional. As one California court observed three decades ago:

> Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Ewing v. City of Carmel-By-The-Sea*, 286 Cal. Rptr. 382, 388 (Cal. Ct. App. 1991). Or, as the Pennsylvania Supreme Court noted:

> The permanence and stability of people living in single-family residential zoning districts creates a sense of community, cultivates and fosters relationships, and

---

[3] The New Braunfels ordinance is more restrictive than Jamaica Beach's, outright *prohibiting* non-grandfathered STRs in single-family residential districts.

> provides an overall quality of a place where people are invested and engaged in their neighborhood and care about each other.

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 900 (Pa. 2019). This is a straightforward application of the rational basis test. *See Wihbey v. Zoning Bd. of Appeals of the Pine Orchard Ass'n*, 323 A.3d 324, 334 (Conn. 2024) ("zoning authorities are free to adopt regulations that permit only long-term rentals in an effort to promote stability and a sense of community within a single-family residential zone"); *Hensley v. Gadd*, 560 S.W.3d 516, 524-25 (Ky. 2018) (STR restrictions bear "a rational relation to … the permanent residents' desire to maintain a quiet, well-maintained subdivision with sustained property values").

Furthermore, not one Texas appellate court has struck down STR regulations under the rational basis test. Indeed, the *opposite* is true. The two Texas appellate cases, thus far, that have applied the rational basis test to a city's STR regulation in residential neighborhoods have upheld the municipal regulation. *See City of Dickinson v. Crystal Cruise Investments, LLC*, No. 01-24-00684-CV, 2026 Tex. App. LEXIS 1833, at *13-25 (Tex. App.—Houston [1st Dist.] Feb. 26, 2026, no pet. h.) (reversing final judgment that struck down STR regulations and rendering judgment under rational basis test); *Draper v. City of Arlington*, 629 S.W.3d 777, 794 (Tex. App.—Fort Worth 2021, pet. denied) (upholding denial of temporary injunction because STRs have a rational basis).

Plaintiffs reference multiple other Texas appellate court decisions, but none of them have entered holdings in conflict with *City of Dickinson* and *Draper*.

Plaintiffs, first, cite *Tarr* and *JBrice* for the non-controversial concept that STR tenants engage in "residential" activities, albeit transitory. *See JBrice Holdings, LLC v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 184 (Tex. 2022); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 291 n.14, 292 (Tex. 2018). But that is not the issue. The issue is the short

*duration* of the stay—whether "residential" or not—which type of use can transform a neighborhood, from a communal place for families to take root and invest in each other's lives, into a tourist area built only for bursts of recreational enjoyment.  These are fundamentally different in character and use.  The former is "wholly residential," and the latter is "minimally residential."  While a one-night stay in a home may technically be a "residential" use, no one would rationally contend such use is of the same character as a 20-year stay.  As anyone who has lived in the same home for multiple years can attest, the longer a neighbor resides next door, the more likely people's lives will become intertwined, including borrowing household items, babysitting, pet-sitting, and backyard gatherings.  And, as anyone who has used Airbnb or Vrbo for a three-night stay can attest, no community investment whatsoever occurs.

Plaintiffs, second, cite *City of Dallas*, *City of Grapevine*, and *Village of Tiki Island*, but those three interlocutory opinions merely allowed plaintiffs' claims against STR regulations to *proceed*, and all three conducted no rational basis review whatsoever, saving any such review for the "case's merits" on remand.  *See City of Dallas v. Dallas Short-Term Rental All.*, No. 05-23-01309-CV, 2025 Tex. App. LEXIS 5127, at *5-6 (Tex. App.—Dallas July 18, 2025, pet. filed) (noting that, on interlocutory appeal, the city did not challenge the trial court's interlocutory finding that the ordinances "do not rationally relate to the claimed governmental interests"); *City of Grapevine v. Muns*, 651 S.W.3d 317, 347 (Tex. App.—Fort Worth 2021, pet. denied) ("Whether the durational restrictions imposed by the STR Ordinance violate the Homeowners' due-course-of-law rights regarding their right to lease goes to the case's merits, an altogether improper inquiry at this stage of the case."); *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (not even using the phrase "rational basis").

Plaintiffs, third, repeatedly cite to *Spann*. The 1921 *Spann* opinion's formulation of the rational basis test was superseded by the 1934 *Lombardo* opinion once the Texas Legislature approved of zoning regulations in the state. *See Lombardo v. City of Dallas*, 124 Tex. 1, 8-9 (1934) (recognizing Texas zoning authority statute superseded *Spann*). For almost a century, Texas case law addressing the rational basis test has not looked to *Spann*. *See, e.g.*, *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933-34 (Tex. 1998) (citing *Lombardo* as earliest statement of rational basis in context of municipal property regulation). *Spann* does not govern these sorts of lawsuits.

In sum, even if freely allowing STRs might be rational in view of STR tenants' residential-type conduct within the homes, so too restricting or even prohibiting STRs is rational in view of STR tenants' negative impact on the surrounding neighborhood's lived-in, long-term residential character. A court's job is not to select the preferred policy. So long as the city's chosen approach is rational, it must be upheld. Given that a city can *outright prohibit* prospective STRs (as the above-cited case law shows), surely Jamaica Beach is entitled to require STR registrations, limit advertised occupancy, demand insurance coverage, expect prompt onsite remedial actions, and impose penalties for Ordinance violations.

### B. The 2026 Ordinance does not violate any procedural due process rights.

The fundamental requirement of procedural due process is that a person receives notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). The City's Ordinance satisfies that requirement. Both of Plaintiffs' arguments to the contrary fail.

First, Plaintiffs complain that an STR in Jamaica Beach can receive various "strikes" without the ability to contest them or, in some instances, cure them. However, in so complaining, Plaintiffs misrepresent the nature of the overall enforcement process. Specifically, this is a three-

stage process.  In the first stage, an STR owner can receive "strikes" for violating the Ordinance, but those strikes alone cannot result in suspension or revocation of the STR license.  *See* Ord. § 5.A.1.  Instead, that depends on the second stage, which only occurs upon the receipt of three strikes, and during which the STR owner receives "written notice" (at least 10 days in advance) of an evidentiary hearing before the City Council, where the STR owner "may present evidence, witnesses, and mitigating circumstances."  *See id.* § 5.A.2.  The three strikes alone do not mandate enforcement, because the City Council must also determine "whether the circumstances warrant imposition, modification, or dismissal of the proposed suspension."  *See id.* § 5.A.3.a.  The STR owner is entitled to at least 15 minutes for his presentation, and may be granted additional time "for good cause."  *See id.* § 5.A.3.c.  If the City Council suspends or revokes the STR license, there is then the third stage of judicial challenge in Texas state court.  *See id.* § 5.I.  To the extent such suit is filed in Texas state district court, of course, it could include any constitutional claims, as well as requests for a temporary injunctive relief against enforcement of the suspension or revocation during the lawsuit.

Second, Plaintiffs complain they might be barred from STRs prior to receipt of strikes, due to an administrative-processing delay at the City, or prior to the City Council hearing after receipt of three strikes.  Neither complaint is accurate.  With respect to the former, to the extent the renewal of an STR license is delayed due to City processing issues, Jamaica Beach has not held that licensing delay against the STR owner.  *See id.* § 6.D.  Certainly, Plaintiffs present no evidence to the contrary.  With respect to the latter, the Ordinance expressly provides that the City Council hearing is "pre-suspension," and online platforms need not remove the property listing until "after a suspension or revocation becomes final."  *See id.* §§ 5.A.2, 5.K.

The affiants' claimed experiences only serve to verify the above descriptions, and demonstrate the fairness of this process.

Debra Tabbert claims to lack a current STR license due to the City's delayed processing of her application. *See* Dkt. 13-6 p. 3 ¶ 15. Actually, she was approved, but even if she were correct, the City is not issuing "strikes" based on its own delays, so either way, Ms. Tabbert remains able to engage in STRs.

Marisol Garza-Flores received an STR license for her property for 2026, and because she has complied with the reduced occupancy rules, she has not been suspended, revoked, or been given notice of any "strikes." *See* Dkt. 13-7 pp. 2-3 ¶¶ 10-13.

Dennis Singleton admits he violated the requirement to register STRs, *see* Dkt. 13-8 p. 1 ¶ 4, violated the requirement to report and pay Hotel Occupancy Tax, *see id.* pp. 1-2 ¶ 5, violated the requirement not to engage in STRs without being licensed after being informed licenses were required, *see id.* p. 2 ¶ 8, and again violated the listing prohibition without a license the following year, *see id.* p. 3 ¶ 11. Even after all those violations, Mr. Singleton admits that he has been able to challenge the City enforcement actions in state court. *See id.* p. 4 ¶¶ 21-22.

Daniel Schmidt admits that he learned of his property's reduced occupancy in May 2025 and yet continued to advertise it at the illegal occupancy amount on August 5-7, and again on August 27 after being cited for that violation. *See* Dkt. 13-9 p. 2 ¶¶ 6-13. Mr. Schmidt further admits that he fully participated in the second stage of a City Council hearing, at which both he and his property management company were allowed to present evidence. *See id.* p. 3 ¶ 16. Lastly, Mr. Schmidt admits that he did not have to suspend his STRs until *after* the City Council hearing. *See id.* ¶ 18.

Moreover, there is a ripeness issue here. The only alleged enforcement actions, to date, occurred under prior iterations of Jamaica Beach's STR Ordinance. Plaintiffs do not explain how they can enjoin the 2026 Ordinance based on a lack of procedural due process, when no plaintiff— or literally anyone else—has even possibly been deprived of procedural due process under the 2026 Ordinance.

In sum, Plaintiffs' claims regarding procedural due process do not support this Court's grant of a preliminary injunction. The only homeowners who have had STR enforcement activity directed at them (under prior ordinances) had *repeatedly* engaged in non-compliance, and then received both notice and an opportunity to be heard, at every stage of the process.

## C.    The 2026 Ordinance is not unconstitutionally retroactive.

The fundamental flaw with Plaintiffs' final claim—a retroactivity claim—is that any homeowner can continue STRs in Jamaica Beach, so long as they comply with the regulatory requirements. A city can *prospectively* change licensing and regulatory standards, precisely as Jamaica Beach has done. *See Rancho de Los Arboles LLC v. Town of Cross Rds.*, No. 02-25-00208-CV, 2026 Tex. App. LEXIS 923, at *18-23 (Tex. App.—Fort Worth Jan. 30, 2026, no pet. h.) (plaintiff failed to show deprivation from STR regulations, for retroactivity claim, where "ordinance places requirements upon use of single-family residences as STRs but does not prohibit or eliminate that use"). Plaintiffs cite to no case law authority that would prohibit municipalities from strengthening STR regulations to address their harmful impacts on the community.

The retroactivity case law that Plaintiffs rely on is distinguishable in one key aspect. All of them involve outright *bans* on existing STRs. *See Browning v. Town of Hollywood Park*, No. SA-23-CV-01485, 2023 U.S. Dist. LEXIS 234886, at *1 (W.D. Tex. Dec. 22, 2023) (Ordinance "amends the Town's zoning code to prohibit 'short-term rentals' anywhere in the Town"); *Anding v. City of Austin*, No. 1:22-CV-1039, 2023 U.S. Dist. LEXIS 132883, at *8 (W.D.

Tex. Aug. 1, 2023) (Ordinance "permanently barred" plaintiff "from operating an STR" in property where he did not reside); *City of Grapevine v. Muns*, 651 S.W.3d 317, 325 (Tex. App.—Fort Worth 2021, pet. denied) ("City of Grapevine passed an ordinance expressly prohibiting STRs in the City"); *Zaatari v. City of Austin*, 615 S.W.3d 172, 180 (Tex. App.—Austin 2019, pet. denied) (Ordinance "bans short-term rentals of non-homestead properties").

That is not the situation here. Two of the affidavits attached to Plaintiffs' Brief show continued STR use without any suspension. *See* Dkts. 13-6 & 13-7. The two other affidavits show a delay or a suspension due to the landowners' multiple violations of the STR regulations. *See* Dkts. 13-8 & 13-9. This is not an outright ban. In Jamaica Beach, any homeowner who properly maintains their property, and properly operates their STR business, can continue to do so without City interference.

Note that Jamaica Beach does not enforce its 2026 Ordinance retroactively. Any STR violations prior to 2026 are addressed in accordance with the rules then in place. Likewise, homeowners who engaged in STRs prior to the 2026 Ordinance may continue to do so.

Moreover, even if this Court were to conduct a retroactivity analysis with respect to the 2026 Ordinance, it would not likely be held unconstitutional. This case is comparable to the recent *Villanueva* case in the Western District of Texas, in which the district court denied the plaintiffs' motion for preliminary injunction based on a retroactivity claim against STR regulations that did not operate as an outright ban. *See Villanueva*, 2024 U.S. Dist. LEXIS 85735, at *20-21 ("Despite Plaintiffs' repeated characterization of the Ordinance as a 'ban,' the Ordinance is a regulation that lays out an administrative scheme in which any property owner in the Village may obtain a CUP to operate an STR so long as they complete the application process and get approval from the City Council.").

First, just like in *Villanueva*, Jamaica Beach "had a strong public interest in establishing the STR permit regulatory scheme." *See id.* at *27. The evidence at the preliminary injunction hearing will show that Jamaica Beach relied on the exact same two categories of evidence as held in *Villanueva* such that municipalities have a compelling interest in regulating STRs. Jamaica Beach both "considered how other municipalities in Texas have regulated STRs and modeled their ordinance based on their research," and further "consistently heard and considered specific concerns from its residents." *See id.* at *27-28.

Second, the court in *Villanueva* rightly recognized that in Texas "the right to lease property for a profit can be subject to restriction or regulation." *See id.* at *29. As Plaintiffs acknowledge, Jamaica Beach began taxing STRs differently in 1997, *see* Dkt. 13 at 13 n.8, and then began further regulating them in 2021, *see id.* at 6. Plaintiffs have thus had five years, now, to adjust to increased regulations, and point to no authority for their apparent belief that they have a "settled right" to lease STRs without any regulation at all. There is no evidence that the 2026 Ordinance will stop Plaintiffs, or any other homeowners, from leasing their properties and thereby making income on their properties. Certainly, Plaintiffs purchased their property with an expectation that any right to operate an STR *could be* subjected to a discretionary permitting process. They simply need to operate their STRs in a manner that is safe and compatible with the neighborhoods' surrounding residential character. *See City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972) ("property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made").

At most, Texas courts have held that there may be a "narrow vested right" to *continue* STR use. *See Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Because the 2026 Ordinance allows existing STR uses to continue—albeit within

an established regulatory framework—Plaintiffs do not satisfy the second element.  *See Hignell*, 2024 U.S. Dist. LEXIS 34030, at *40-41 ("property owners do not have a vested right to lease their property for profit in any certain way, without restriction").

Third, and most significantly, the extent of any impairment is not severe.  Homeowners can continue to engage in STRs and earn income thereby.  No STR license has been suspended under the 2026 Ordinance, and the only STR license to be suspended thus far under earlier versions of the STR regulations is that held by Mr. Schmidt, who pleaded guilty to his multiple violations, and could not deny that every notice of violation was timely received, and was only overlooked because his management company failed to raise the issues to his attention.  Indeed, Plaintiffs cannot point to a single STR license, to date, that has been denied.  *See Villanueva*, 2024 U.S. Dist. LEXIS 85735, at *33-34 (finding extent of burden of STR regulations did not support retroactivity claim where the ordinance was "not an outright ban on STRs" and where multiple "permits have been approved").

This analysis applies not just to the 2026 Ordinance generally, but also to Plaintiffs' specific complaint regarding the modified occupancy limits.  Occupancy concerns are an appropriate basis for STR regulations.  *See, e.g.*, *Underwood v. Oriol*, No. 3:23-cv-00029, 2023 U.S. Dist. LEXIS 119784, at *20-21 (D. Nev. July 12, 2023).  Under FEMA floodplain guidelines applicable to the City, the ground-floor areas are generally limited to non-habitable uses.  *See* Ord. § 1.D.  Because STR renters are less familiar with the flooding dangers on Galveston Island, Jamaica Beach concluded that the advertised occupancy for a single home should not take into account the square footage located in that non-habitable area that is prone to flooding.  Nonetheless, sufficient occupancy remains available.  The entire City is zoned single-family.  Under the 2026 Ordinance, STRs can be advertised at two-per-bedroom plus four, or square-foot

living area divided by 150, but no more than 12 occupants. *See id.* § 1.L. Thus, a two-bedroom home with more than 1,050 square feet can advertise for 8 occupants, a three-bedroom house more than 1,350 square feet can advertise for 10 occupants, and a four-bedroom house with more than 1,650 square feet can advertise for 12 occupants. *See id.* § 4.C. That is not burdensome.

This analysis equally applies to Plaintiffs' complaint regarding insurance coverage. Insurance requirements are an appropriate aspect of STR regulations. *See, e.g.*, *Hignell*, 2024 U.S. Dist. LEXIS 34030, at *57-58, *aff'd*, 154 F.4th 345 (5th Cir. 2025). Plaintiffs express concern that an insurance policy from certain STR platforms such as Airbnb or Vrbo does not satisfy Jamaica Beach's insurance requirement, but there is good reason for this. Many STR rentals are advertised on multiple platforms, and even directly to renters without using an online platform. Jamaica Beach requires separate insurance to ensure that *every* rental will be protected, not just those made employing a specific platform that includes insurance.

In sum, Jamaica Beach's STR regulations are not unconstitutionally retroactive. This is not an outright ban, and there is no evidence of any degree of burden imposed that might remove vested or settled property rights.

## II.    Plaintiffs cannot show a substantial threat of irreparable harm absent their requested preliminary injunction.

A preliminary injunction cannot be granted unless the plaintiffs show irreparable harm.

*See Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weights heavily against a claim of irreparable harm.

*Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975). Plaintiffs have no evidence that the 2026 Ordinance will be enforced in a manner that will cause "significant and potentially permanent

damage to their ability to use their property." Nor do Plaintiffs have any evidence that the 2026 Ordinance will cause such damages to *other* homeowners who wish to have STRs at their properties.

Also, even assuming any one or more of Plaintiffs have been or will be harmed, their sole basis for Plaintiffs' claiming such monetary harm is "irreparable" is that "Defendants will claim immunity from monetary damages." *See* Pls.' Br. at 28. But that is not necessarily true. The very "vested" right Plaintiffs claim to support their due process and equal protection claims, if it existed, would equally support a takings claim for damages. *See Vill. of Tiki Island*, 463 S.W.3d at 575-82 (holding that city's immunity was waived for takings claim based on STR regulations).

In other words, if Plaintiffs have no vested right, then they cannot satisfy the first required element for injunctive relief (likelihood of prevailing), but if Plaintiffs have a vested right, then they cannot satisfy the second required element for injunctive relief (irreparable harm).

Moreover, Plaintiffs do not limit their requested injunctive relief to those homeowners who have shown a substantial threat of harm. *Cf. Browning*, 2023 U.S. Dist. LEXIS 234886, at *9-11 (limiting injunctive relief against STR prohibition solely to those individual plaintiffs who demonstrated harm). Plaintiffs cannot satisfy their burden to prove that *every* homeowner who desires to conduct STRs on his property faces a substantial threat of irreparable harm absent the requested preliminary injunction. Thus, Plaintiffs cannot be granted their requested relief.

## III.    The balance of harms does not support Plaintiffs' requested preliminary injunction.

The fundamental flaw with Plaintiffs' requested preliminary injunction, when weighing the equities between the parties, is the scope of the relief demanded. Plaintiffs have not identified discrete aspects of the Ordinance they want paused. Rather, the scope of judicial relief is broad and unchecked. *See* Dkt. 1 ¶ 122 ("order that Defendants refrain from enforcing short-term rental ordinances and restrictions").

> Under Rule 65, Plaintiffs ask the Court to issue a preliminary injunction barring Defendants, directly or indirectly, from enforcing the 2026 Ordinance until this case concludes.  This includes the issuance of citations, fines, punishments, charges, judgments, revocations, or suspensions.

Dkt. 13 p. 29.

That is overbroad.  Under Plaintiffs' pleaded relief, Jamaica Beach could not regulate STRs at all.  There would be no licensing or registration, no Hotel Occupancy Tax reports, no limits on advertised occupancy, no STR governance regarding safety, noise, lighting, crowds, or parking, no ability to penalize property owners whose STR tenants engage in nuisance or criminal conduct and then skip town, no ability to collect fees to help defray government expenses, and no ability to ensure sufficient insurance to cover damage to public property caused by transient guests.  That is not in accord with the law, and is sufficient basis, alone, to deny Plaintiffs' application.  *See Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir. 1992) ("Injunctions must be narrowly drawn and precise.").

## IV.    The public interest does not support Plaintiffs' requested preliminary injunction.

With respect to STRs in any residential community, there are two competing interests at work.  Plaintiffs advance the interests of those homeowners who want the revenue from STRs at *their* properties.  But the competing interests are those who live in the same community who want relief from the negative externalities of STRs occurring at their *neighboring* properties.

The latter interests are not difficult to understand.  Transient guests at STRs are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.  *See Ewing*, 286 Cal. Rptr. at 388.

> As short-term rental listings increase in an area, locals experience problems such as "unfamiliar cars blocking driveways, late night parties on formerly quiet streets, and concerns about child safety in an environment with fewer familiar eyes on the street."

Allyson E. Gold, *Community Consequences of Airbnb*, 94 WASH. L. REV. 1577, 1581-81 (Dec.

2019).  Indeed, the company Airbnb essentially admitted this issue in its 2020 public SEC filing:

> We have no control over or ability to predict the actions of our users … either during
> the guest's stay, experience, or otherwise, and therefore, we cannot guarantee the
> safety of our hosts, guests, and third parties.  The actions of hosts, guests, and other
> third parties have resulted and can further result in fatalities, injuries, other bodily
> harm, fraud, invasion of privacy, property damage [and] discrimination ….

Airbnb, Inc., SEC Form S-1 Registration Statement, p. 45 (Nov. 16, 2020).

A prospective buyer of a house, upon learning that both sides of the property are listed on

Airbnb or Vrbo, would likely opt not to make that house his family home.  Perhaps those

surrounding houses leased via Airbnb or Vrbo would have presented no nuisance-type issues over

the ensuing years, and perhaps long-term neighbors might create their own noise issues, but no

one could accuse the prospective buyer of being *irrational* in declining to purchase that house.  It

is entirely rational to view short-term-leased houses as (1) creating the frustrating uncertainty of a

rental-by-rental potential for excessive nighttime noise and (2) reducing the potential for the

neighborly camaraderie that one often hopes for when joining a new neighborhood.  The Fifth

Circuit has observed, in the context of STR regulation, that there is "*no question*" reducing

nuisance-type behavior in a residential neighborhood is a legitimate local purpose.  *See Hignell-

Stark*, 46 F.4th at 328 (emphasis added).  Nor can there be a reasonable dispute that short-term

leasing *can* bring in partiers.  *See, e.g., Anderson v. Metro. Gov't of Nashville & Davidson Cty.*,

No. M2017-00190-COA-R3-CV, 2018 Tenn. App. LEXIS 28, at *27 (Tenn. Ct. App. 2018) ("my

children's friends have been replaced by bachelorette parties").  It is reasonable to conclude that

guests residing in a home for less than 30 days are less likely to worry about their reputation in the

community, including such issues as crowds, noise, and trash.  *See Nekrilov*, 45 F.4th at 680-81.

The public interest does not support enjoining Jamaica Beach from enforcing its STR regulations.

## CONCLUSION AND PRAYER

A preliminary injunction is an "extraordinary remedy." Here, the remedy sought is particularly extraordinary—entirely enjoining the regulation of STRs across the entire city, so that STRs can operate at the whim of the homeowners, no matter what actions have been taken by the owners or by the renters. This Court should deny Plaintiffs' overbroad, unwarranted request.

WHEREFORE, Defendants respectfully pray that the Court deny Plaintiffs' Motion for Preliminary Injunction, and for all other and further legal and/or equitable relief to which Defendants may be justly entitled.

Respectfully submitted,

By: _____

Ryan D. V. Greene
State Bar No. 24012730
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
(512) 474-9100
(512) 474-9888 (Facsimile)
rgreene@terrillwaldrop.com

ATTORNEY FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I hereby certify that the following counsel are being served on March 13, 2026, with a copy of this document via the Court's CM/ECF system.

Andrew J. Mytelka
Angie Olalde
GREER HERZ & ADAMS LLP
One Moody Plaza, 18th Floor
Galveston, Texas 77550

J, Patrick Sutton
GOTTFRIED ALEXANDER LAW FIRM
1505 W. 6th Street
Austin, Texas 78703

Ryan D. V. Greene