United States District Court
Southern District of Texas
**ENTERED**
May 01, 2026
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:26-cv-31

JAMAICA BEACH STR ASSOCIATION, DEBRA TABBERT, MARISOL GARZA-FLOREZ, PARAS RANA, AND VICTOR CARRION, *THE PLAINTIFFS*,

v.

CITY OF JAMAICA BEACH, TEXAS, AND THE CITY EMPLOYEE RESPONSIBLE FOR ADMINISTERING THE STR LICENSING PROGRAM, IN AN OFFICIAL CAPACITY, *THE DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The plaintiffs—a nonprofit association and four individual homeowners in Jamaica Beach—have moved to preliminarily enjoin enforcement of the City of Jamaica Beach's Ordinance No. 2026-01 (the "2026 Ordinance"), which overhauled the city's regulation of short-term rentals ("STRs"). The plaintiffs contend the 2026 Ordinance retroactively impairs settled property rights, violates equal protection, and denies them both procedural and substantive due process under the United States and

Texas Constitutions. The defendants oppose, arguing the 2026 Ordinance is a permissible exercise of municipal authority.

The court denies the motion on all grounds but one. The court grants a preliminary injunction only as to the 2026 Ordinance's prohibition on using first-floor space below the base flood elevation for advertising and determining the maximum allowable occupancy of STR properties. On that issue, the plaintiffs have made a sufficient showing under the Texas Constitution's prohibition on retroactive laws to warrant a preliminary injunction.

## I.   Background

### A.   The Parties

Plaintiff Jamaica Beach STR Association (the "Association") is a Texas nonprofit corporation whose purpose is to promote the common interests of its homeowner members and to protect and advance their rights in connection with rental operations in Jamaica Beach. Dkt. 1 ¶ 2. The four individual plaintiffs are Debra Tabbert, Marisol Garza-Florez, Paras Rana, and Victor Carrion; each has operated his or her property as an STR since before the 2026 Ordinance and continues to do so. Dkt. 13 at 17–18.

Defendant City of Jamaica Beach is a Texas general-law municipality in Galveston County. Dkt. 1 ¶ 7. The official-capacity defendant in this matter

is the city employee responsible for administering the STR licensing program. Pam Josselet held that position when this suit was filed and through the preliminary injunction briefing but retired shortly before the hearing. *See* Dkt. 24 at 148–50. Her successor in that role is automatically substituted as the official-capacity defendant. *See* Fed. R. Civ. P. 25(d).

### B.  STR Regulation in Jamaica Beach

STRs have been a feature of Jamaica Beach for decades. The city has collected Hotel Occupancy Tax from STR operators since at least 1997. Dkt. 13 at 23. In 2021, the city first introduced licensing requirements for STR homeowners. *Id.* at 8. The city acknowledges that STRs historically operated in Jamaica Beach with little regulation but maintains a rapid rise in STRs and related nuisance conduct, like noise, overcrowding, and disturbances to neighboring residents, justifies increased regulation. *See* Dkt. 14 at 2.

The city started regulating STRs in 2021 with Ordinance Nos. 2021-06 and 2021-07, which distinguished between long-term rentals and STRs for the first time and established the city's initial STR licensing framework. *See* Dkt. 1 ¶ 29. Between 2021 and 2025, the city amended its STR regulations multiple times. *See id.* ¶¶ 29–37. These amendments included changes such as raising annual license fees to $250, imposing occupancy limits, criminalizing violations, authorizing administrative search warrants,

expanding grounds for license suspension, and permitting permanent license revocation after two suspensions. *See id.* ¶¶ 33–38.

### C.    The 2026 Ordinance and Effect on the Plaintiffs

On January 8, 2026, the city enacted the 2026 Ordinance, which repealed the prior STR ordinances and implemented a revised regulatory scheme governing rentals of 29 days or fewer. *See* Jamaica Beach, Tex., Ord. No. 2026-01 (Jan. 8, 2026). The plaintiffs take issue with several aspects of the 2026 Ordinance.

The 2026 Ordinance requires STR operators to maintain $1,000,000 in general liability insurance. *See id.* art. 3.A.16. The plaintiffs assert that this requirement is duplicative where coverage is already provided through rental platforms and increases the cost of continued operation. Dkt. 13 at 16. The defendants contend that the requirement ensures adequate protection against risks associated with temporary occupancy regardless of whether owners use, or do not use rental platforms for additional coverage. Dkt. 14 at 17.

The 2026 Ordinance limits occupancy in two ways. The first is through a 12-person maximum occupancy cap. *See* Jamaica Beach Ord. No. 2026-01 arts. 1.A, 1.L. The plaintiffs contend that this limit restricts their ability to rent to larger groups that their properties could otherwise accommodate and,

thereby, affects the revenue and the viability of their businesses. Dkt. 13 at 17–18. The defendants assert that such limits address safety and nuisance concerns stemming from large groups of temporary residents. Dkt. 14 at 16–17. Second, the 2026 Ordinance restricts the effective use and marketing of certain portions of a home by excluding first-floor spaces below the base flood elevation from occupancy calculations and by preventing owners from advertising or presenting those spaces as usable in their online listings. *See* Jamaica Beach Ord. No. 2026-01 arts. 1.D, 1.Q, 1.L, 3.A.10, 4.C. The plaintiffs assert that this restriction prevents continued use, for profit, of portions of their homes that were always previously marketable. Dkt. 13 at 17–18. The city described these provisions as addressing floodplain safety concerns and the risks of flooding to short-term occupants. Dkt. 24 at 23–24.

The record reflects injuries to the individual plaintiffs. Plaintiff Tabbert, who has owned her property since 2010 and operated it as an STR prior to any city regulation, is now prohibited from renting or advertising her first-floor living space and is required to reduce her approved occupancy despite her previous use of the property. Dkt. 1 ¶¶ 60; Dkt. 13 at 17; Dkt. 24 at 37–38, 43.

Similarly, plaintiff Garza-Florez, who began operating her property as an STR in 2019 with an approved occupancy of fifteen, states that the city

reduced her permissible occupancy to ten and informed her that she may not lease or advertise her downstairs living area to STR guests. Dkt. 1 ¶¶ 61–62, 114; Dkt. 13 at 17–18. The defendants contend that such restrictions are tied to safety concerns specific to temporary renters and the appropriate use of residential structures. Dkt. 14 at 16–17.

The 2026 Ordinance further establishes an enforcement system based on "Verified Violations." Under this system, certain violations, including the issuance of a citation, may constitute an immediate violation without a prior opportunity to cure, while other violations may be subject to notice and cure provisions. *See* Jamaica Beach Ord. No. 2026-01 arts. 1.Z, 5.B, 5.C, 5.H. Verified Violations accumulate and may result in suspension or revocation of an STR license. *See id.* art. 5.A. The plaintiffs contend that this system permits violations to accrue without adequate notice or opportunity to cure and may be based on citations that are later dismissed, exposing them to the risk of suspension or loss of their ability to operate STRs. Dkt. 13 at 15–16. The defendants respond that the 2026 Ordinance provides notice, hearing, and review procedures consistent with due process. Dkt. 14 at 10–13.

Finally, the plaintiffs challenge the application of the 2026 Ordinance, asserting that it interferes with their expectations and existing use of their properties. Dkt. 13 at 8, 20–23. The defendants maintain that the 2026

Ordinance reflects a continuation and refinement of prior regulatory efforts and permits continued STR use subject to regulation. Dkt. 14 at 13–17.

Following the enactment and enforcement of the 2026 Ordinance, the plaintiffs filed this suit on February 4, 2026, and moved for a preliminary injunction, bringing claims of: (1) retroactive deprivation of settled property rights (Tex. Const. art. I, § 16); (2) equal protection (U.S. Const. amend. XIV; Tex. Const. art. I, § 3); (3) procedural due process (U.S. Const. amend. XIV; Tex. Const. art. I, § 19); and (4) substantive due process (U.S. Const. amend. XIV; Tex. Const. art. I, § 19). Dkt. 1 ¶¶ 113–122; Dkt. 13 at 10.

At the hearing, the plaintiffs requested the following relief:

[That the defendants be] ENJOINED from:

1. requiring an additional $1 million general liability insurance policy from STR homeowners if they already have $1 million in coverage, e.g., through a rental platform or management company;

2. prohibiting short-term rental [] homeowners from leasing or advertising their first-floor living spaces;

3. enforcing an arbitrary 12-person maximum STR occupancy if a house will accommodate more;

4. registering multiple 'verified violations' on one issue (e.g., advertising) without first providing STR homeowner with actual notice and an opportunity to cure;

5. treating the mere issue of a citation as a 'verified violation';

6. enforcing the 2026 Ordinance against homeowners who purchased before the effective date of Ordinance 2023-11 [],

though the City may apply terms contained in the 2021 Ordinance; and from

7. discussing with, or instructing the City prosecutor not to dismiss, citations for alleged STR violations.

Dkt. 21 ¶¶ 1–7.

## II.   Legal Standard

A party seeking a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). A preliminary injunction is "an extraordinary and drastic remedy" that a court should not grant unless "the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The decision to grant or deny a preliminary injunction "lies within the sound discretion" of this court. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).

## III.   Analysis

Having reviewed the parties' submissions and arguments, the court concludes that the plaintiffs are unlikely to succeed on most of their claims. The plaintiffs have not demonstrated a substantial likelihood of success on

their equal-protection, procedural-due-process, or substantive-due-process claims challenging the 2026 Ordinance.

The court's conclusion differs, however, as to the plaintiffs' claim under the Texas Constitution's prohibition on retroactive laws with respect to one aspect of the 2026 Ordinance. As explained below, the plaintiffs have not shown a likelihood of success on a broad retroactivity challenge to the 2026 Ordinance as a whole but have made a sufficient showing as to the restriction that prohibits homeowners from including first-floor space in occupancy calculations and marketing it as sleeping space.

## A. Equal Protection, Procedural Due Process, and Substantive Due Process Claims

The plaintiffs have not demonstrated a substantial likelihood of success on their equal-protection, substantive-due-process, or procedural-due-process claims challenging the 2026 Ordinance.

### i.    Equal Protection and Substantive Due Process

Because the 2026 Ordinance neither burdens a fundamental right nor classifies along suspect lines, it need only be rationally related to a legitimate governmental interest. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see Draper v. City of Arlington*, 629 S.W.3d 777, 785–89, 791–92 (Tex. App.—Fort Worth 2021, pet. denied) (applying rational basis to STR

ordinance under both equal-protection and substantive-due-course-of-law claims).

The challenged provisions clear that bar. The $1,000,000 insurance requirement (Dkt. 21 ¶ 1), the 12-person occupancy cap (Dkt. 21 ¶ 3), and the restriction on advertising first-floor space below the base flood elevation (Dkt. 21 ¶ 2) are each rationally connected to the city's interests in public safety, nuisance mitigation, and floodplain risk management. Texas courts and the Fifth Circuit have recognized these as legitimate governmental interests in the zoning and STR context. *See Draper*, 629 S.W.3d at 786–87; *Jackson Court Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1077–78 (5th Cir. 1989). The plaintiffs have not shown a likelihood of success on these claims, and their requests for preliminary injunctive relief on these grounds are denied.

### ii.   Procedural Due Process

Procedural due process requires notice and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The 2026 Ordinance provides written notice, a hearing before the Board of Aldermen prior to any suspension or revocation of an STR registration, and an opportunity for judicial review. *See* Jamaica Beach

Ord. No. 2026-01 arts. 5.A.2–3, 5.I. The plaintiffs raise concerns about the recording of individual Verified Violations and the city's role in prosecutorial decisions, but the present record does not show a likelihood of success on their procedural-due-process claim, particularly where the ordinance assures "a right to an evidentiary hearing, as well as to subsequent judicial review," before a license is revoked. *Mathews*, 424 U.S. at 349. The plaintiffs' requests to enjoin enforcement of the Verified Violation provisions (Dkt. 21 ¶¶ 4–5) and to enjoin the city from directing its prosecutor not to dismiss citations (Dkt. 21 ¶ 7) are denied.

### B. Likelihood of Success on Retroactivity Claims

The plaintiffs asserted both a broad retroactivity challenge to the 2026 Ordinance as a whole and a narrower challenge to specific provisions. The court concludes that the broad challenge does not demonstrate a likelihood of success. But the court decides that the plaintiffs have made a sufficient showing as to one aspect of the 2026 Ordinance: its restriction against the leasing and advertisement of first-floor spaces.

### i.     Texas Constitutional Retroactivity Prohibition

The Texas Constitution prohibits retroactive laws. Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). The prohibition

against retroactive laws has two fundamental objectives. First, it "protects the people's reasonable, settled expectations," and second, it "protects against abuses of legislative power." *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 (Tex. 2010). In *Robinson*, the Texas Supreme Court established that retroactivity analysis requires a balancing of three factors: (1) "the nature and strength of the public interest served by the statute"; (2) "the nature of the prior right impaired"; and (3) "the extent of the impairment." *Id.* at 145.

In adopting this three-factor framework, the Texas Supreme Court rejected the vested-rights analysis that had previously governed retroactivity claims. The court observed that "[w]hat constitutes an impairment of vested rights is too much in the eye of the beholder," *Id.* at 143, so courts consider "not whether the impaired right was 'vested,' but the extent to which that right was 'settled,'" *Zaatari v. City of Austin*, 615 S.W.3d 172, 190 (Tex. App.—Austin 2019, pet. denied). Texas courts have applied this framework in the STR context. In *Zaatari*, the court held that a municipal STR restriction was unconstitutionally retroactive where it "significantly affect[ed] property owners' substantial interests" while serving only a minimal public interest on the record presented. 615 S.W.3d at 180.

### ii. Broad Retroactivity Challenge to the 2026 Ordinance

The plaintiffs' retroactivity challenge reaches several provisions of the 2026 Ordinance: the insurance requirement (Dkt. 21 ¶ 1), the first-floor advertising and occupancy restriction (Dkt. 21 ¶ 2), the occupancy cap (Dkt. 21 ¶ 3), and the request that preexisting owners be exempted from the ordinance as a whole (Dkt. 21 ¶ 6). Because *Robinson* requires a balancing of public interest, nature of the prior right, and extent of impairment for each challenged provision, the court addresses them separately. *See Robinson*, 335 S.W.3d at 145. The court first takes up the insurance requirement, the occupancy cap, and the request for a blanket exemption (Dkt. 21 ¶¶ 1, 3, 6), on which the plaintiffs have not shown a likelihood of success. The first-floor restriction (Dkt. 21 ¶ 2) is addressed in the section that follows.

Both the insurance requirement and the occupancy cap appear to serve substantial public interests. The $1,000,000 insurance requirement addresses the city's interest in ensuring adequate protection against the risks associated with transient occupancy. The 12-person cap addresses the city's interest in public safety and in mitigating the effects of overoccupancy, and the record includes evidence that those interests are real and particular to the conditions in Jamaica Beach. *See* Dkt. 24 at 200–05 (testimony of Aaron Renick describing "loud partying," "30-people-plus" gatherings, and live

music at a neighboring STR); *id.* at 218 (testimony of Suzanne Rigby describing STRs advertising occupancy of 22–24 and parties running all night). These restrictions are thus unlike *Zaatari*, where the challenged provision imposed a ban on a certain class of short-term rentals and served only "a minimal, if any, public interest." 615 S.W.3d at 191. On the present record, the burden on plaintiffs is substantially less, and the city's interests are legitimate. Therefore, the plaintiffs have not shown a likelihood of success on their retroactivity challenge to the insurance and occupancy-cap provisions (Dkt. 21 ¶¶ 1, 3).

As to the plaintiffs' broader request that preexisting owners be exempted from the entire 2026 Ordinance (Dkt. 21 ¶ 6), the plaintiffs' settled expectations are entitled to meaningful consideration under *Robinson*, 335 S.W.3d at 145, but the retroactivity prohibition does not categorically freeze prior regulatory conditions in place. *Robinson* itself recognized that "[m]ost statutes operate to change existing conditions, and it is not every retroactive law that is unconstitutional." *Id.* at 139 (quoting *Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971)). Rather, the question is whether each provision's impairment is substantial and whether the public interest served is sufficient to justify it. *See id.* at 145. Based on the record before the court, and the factors discussed above, the plaintiffs have not

shown a likelihood of success on a blanket retroactivity challenge to the 2026 Ordinance as a whole.

### iii.    The First-Floor Space Restriction

The outcome is different, however, with respect to the 2026 Ordinance's restriction on the use of first-floor space below the base flood elevation in calculating and marketing STR occupancy. The 2026 Ordinance's first-floor restriction operates through two sets of provisions working in tandem. First, the definitional provisions exclude space below the base flood elevation from the home's Compliant Living Area Square Footage and Qualified Bedrooms; then, the operative provisions use those definitions to cap occupancy and restrict listings and advertising.

Article 1.D defines "Compliant Living Area Square Footage" as "the elevated living area above the base flood elevation," recognizing only space that appears on the county appraisal rolls and sits above that line. Jamaica Beach Ord. No. 2026-01 art. 1.D. Any first-floor room below the base flood elevation is thus excluded from the home's countable square footage. Article 1.Q extends, in its definition, the same exclusion to bedrooms: "Bedrooms not included within the Compliant Living Area Square Footage are not Qualified Bedrooms." *Id*. art. 1.Q. A first-floor room that is built, furnished,

and used for sleeping therefore cannot be called a "bedroom" for STR purposes unless it lies above the flood line.

Articles 1.L and 3.A.10 then use those two definitions as the only inputs for calculating how many people may stay at the property. Article 1.L caps "Maximum Occupancy" at the lesser of "(a) two [] persons per Qualified Bedroom, plus four [] additional persons; or (b) Compliant Living Area Square Footage divided by 150 square feet rounded up," but never more than twelve. *Id.* arts. 1.L, 1.A. Article 3.A.10 locks the same formula into the registration application itself. *Id.* art. 3.A.10. Because non-compliant first-floor space is excluded from both inputs, it cannot raise the home's registered occupancy.

Article 4.C connects those definitions and provisions to the owners' ability to advertise and lease their properties. An owner cannot advertise more sleeping space than the registration allows. Article 4.C requires that "[a]ny advertisement shall only reference Qualified Bedrooms," prohibits any listing that would "state, depict, or imply bed counts, sleeping arrangements, or 'sleeps' capacity" exceeding the approved Maximum Occupancy, and requires that "[b]ed configurations, photographs, and descriptions used for marketing shall be consistent with the approved Maximum Occupancy." *Id.* art. 4.C. The ordinance's broad definitions of

16/25

"Offering" and "Short-Term Rental Advertisement" extend this prohibition to any communication on any platform. *Id.* arts. 1.N, 1.T.

Putting these articles together, non-compliant first-floor space is not counted as living area, cannot be labeled a bedroom, cannot raise the occupancy number on the registration, and cannot be shown or described in a listing. The plaintiffs are therefore barred from listing or advertising it as sleeping or occupancy capacity at all. The *Robinson* factors, taken together, weigh against enforcement of the first-floor restrictions.

First, "the nature and strength of the public interest served by the statute," *Robinson*, 335 S.W.3d at 145, appears limited, if not non-existent, as applied to the first-floor restriction. Brandon McDermott, a member of the Board of Aldermen, testified that the city's stated rationale for the first-floor restriction is flood safety, specifically, that short-term renters "from Kansas or elsewhere . . . may have no idea" about local flooding conditions and that such events "can happen fast." Dkt. 24 at 123. Yet McDermott admitted that the 2026 Ordinance does not actually prevent short-term rental guests from sleeping on the first floor; it only prevents owners from counting first-floor rooms toward maximum occupancy: "Short-term rental people can have a first floor just like everyone else. They just can't use it to calculate occupancy." Dkt. 24 at 122. He confirmed that "there is nothing that

says you can't be downstairs," and acknowledged that, "[a]s it's written," guests may use first-floor rooms as bedrooms so long as those rooms are not counted toward the home's registered occupancy. *Id.* at 125–26. Though the "intention is to not have guests who are unaware of the [flood] conditions sleeping downstairs," STR tenants "can use the downstairs bedroom as a bedroom." *Id.* at 126. In other words, the same conduct the city identifies as a flood safety hazard, *i.e.* guests sleeping on the first floor unaware of local flooding risks, remains permissible under the 2026 Ordinance. Thus, the ordinance does not "*serve*" the public interest as *Robinson* requires, rendering this first factor in favor of enjoinment. *Robinson*, 335 S.W.3d at 145 (emphasis added).

Second, as to "the nature of the prior right impaired by the statute," *Robinson*, 335 S.W.3d at 145, the plaintiffs have demonstrated "reasonable, settled expectations" in a well-recognized property right. *Id.* at 139. And the right to lease one's property has long been recognized as among the "essential attributes of property." *Terrace v. Thompson*, 263 U.S. 197, 215 (1923); *see also Calcasieu Lumber Co. v. Harris*, 13 S.W. 453, 454 (Tex. 1890) ("[T]he right to lease [property] to others, and therefore derive profit, is an incident of [fee] ownership."). The *Zaatari* court relied on these same

18/25

authorities in concluding that owners of "rental properties ha[d] a settled interest in their right to lease their property short term." 615 S.W.3d at 191.

The same conclusion follows here. The plaintiffs purchased, operated, and invested in their properties as STRs before the 2026 Ordinance, counting first-floor space toward registered occupancy and advertising that space to potential guests. *See* Dkt. 24 at 31 (Tabbert testifying she purchased her home in 2010 and spent "upwards of $70,000 in renovations"); *id.* at 36 (testifying that rental income was reinvested in fencing, sprinkler system, and landscaping).

Third, as to "the extent of the impairment," the record demonstrates that the first-floor restriction materially diminishes the plaintiffs' established use of their properties. *Robinson*, 335 S.W.3d at 145. The *Zaatari* court applied this principle and found the impairment factor weighed decisively against the ordinance, noting both that the restriction eliminated a recognized property right and that it would "result in a loss of income for the property owners." 615 S.W.3d at 191–92. The testimony at the hearing demonstrates that kind of material impairment here. Tabbert testified that the first floor was a central feature of her rental property, providing space for families, including groups with parents, children, and grandparents, and that losing use of that space would be "detrimental to my rentals because my

rental guests use my home the same way I do." Dkt. 24 at 37–38. Because her upstairs contains only two bedrooms that can sleep four, the elimination of first-floor space means that, although the city nominally permits occupancy of eight, she "can't advertise my home as, you know, sleeping eight when technically I only have beds for four." Dkt. 24 at 58. Tabbert testified that this would have "a significant impact on my bookings because not many homes rent to just four people," and that her home, marketed as a family rental, would not be "an attractive rental for four adults." Dkt. 24 at 58–59. Tabbert further confirmed that she was able to lease her first floor in 2025, but is no longer able to do so under the 2026 Ordinance. Dkt. 24 at 49. Similarly, Tim Smith testified that four of his five bedrooms are on the first floor, all of which were part of the property's taxable living space, and all of which are now excluded from his rental capacity under the 2026 Ordinance. Dkt. 24 at 181.

*Zaatari* held an STR ordinance unconstitutionally retroactive where it had "a significant impact on property owners' substantial interest in a well-recognized property right" while serving "a minimal, if any, public interest." 615 S.W.3d at 191–92. *Robinson* frames the third factor as "the extent of the impairment," 335 S.W.3d at 145, which is a question of degree. Here, the impact on plaintiffs is substantial, and the statute does not vindicate the

interest espoused by the city, shown by Alderman McDermott's admission. Balancing these factors, the court concludes that the plaintiffs have demonstrated a likelihood of success on their retroactivity challenge to this aspect of the 2026 Ordinance.

## C. Irreparable Harm

To obtain a preliminary injunction, the plaintiffs must demonstrate a substantial threat of irreparable harm, that is, harm for which there is no adequate remedy at law. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). "[T]he mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* The court addresses this factor only as to the first-floor restriction.

"A trial court may [] grant injunctive relief when the enjoined conduct threatens to disrupt an ongoing business." *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 750 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Asbury MS Gray-Daniels, L.L.C. v. Daniels*, 812 F. Supp. 2d 771, 781 (S.D. Miss. 2011) (noting that loss of business and customer goodwill that would be "very difficult, if not impossible, to calculate and remedy in terms of monetary damages" can support an injunction). The first-floor restriction limits the plaintiffs' ability to market their properties to the family renters who have made up their customer base.

The hearing testimony establishes that the first-floor restriction likely will cause such a disruption of business. Tabbert testified that her 1,400-square-foot home has only two bedrooms upstairs, and that her customer base consists of multigenerational families who use the downstairs as a separate space for one generation while the other uses upstairs. Dkt. 24 at 37. Losing the use of that downstairs, she testified, "will be really detrimental to my rentals because my rental guests use my home the same way I do," for a multigenerational family. *Id.* at 37–38. Tabbert also testified that her rental income goes to "offset some of our taxes and insurance" and that it "definitely is not a moneymaker," meaning her enterprise would likely be materially disrupted by this restriction. *Id.* at 36. Pam Josselet, the former city employee who administered the STR-licensing program, conceded that losing the right to count first-floor space makes these homes "less rentable" and that the owner "would be harmed because they have less to rent." *Id.* at 168–69.

The reasoning of *Village of Tiki Island v. Ronquille*, 463 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2015, no pet.), is relevant on both a legal and factual basis. There, the court upheld a temporary injunction against an STR-restricting ordinance, *id.* at 583–87 (homeowner had purchased her property as an investment, made substantial improvements, and operated it

as an STR for years), holding that she had identified a settled right in the continued investment use of her property and demonstrated "imminent harm to her investment and business activities that cannot be redressed" otherwise. *Id.* at 587. The same reasoning applies here. The plaintiffs purchased and improved their homes for STR use and built their operations around occupancy levels that included first-floor space. Dkt. 24 at 36–37.

The record, therefore, reflects harms that go beyond theoretical lost profits into harms that may not be fully redressable through a future damages award. The plaintiffs have therefore demonstrated a likelihood of irreparable harm with respect to this aspect of the 2026 Ordinance.

### D. Balance of the Equities and Public Interest

The final two preliminary injunction factors, the balance of equities and the public interest, merge when the government is the opposing party. *Nken v. Holder,* 556 U.S. 418, 435 (2009). In weighing them, the court considers the competing injuries to the parties, with "particular regard for the public consequences" of granting relief. *Winter v. NRDC*, 555 U.S. 7, 24 (2008).

On this record, those considerations favor the plaintiffs. The hearing testimony established concrete harms from the first-floor restriction: it renders the plaintiffs' homes unsuitable for the larger family and

multigenerational groups, with expected losses of bookings, goodwill, and the rental income the plaintiffs use to maintain the properties themselves. Dkt. 24 at 36–38, 113, 168–69, 181–82. The city's principal answer is flood safety. That interest is legitimate in the abstract, *see Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 328–29 (5th Cir. 2022), but—as previously discussed—the testimony did not establish the regulation serves that interest. The relationship between what the 2026 Ordinance actually prohibits—counting a downstairs bedroom toward advertised occupancy—and the city's stated safety rationale—the danger of sudden flooding—is attenuated at best. *Cf. Becerra*, 575 F. Supp. 3d at 727 (weighing "particular and tangible" harms against the defendants' "generalized" and "speculative" ones).

Further, the scope of the relief reaches only the first-floor restriction. The rest of the 2026 Ordinance remains in force, along with the city's broader authority to regulate STRs and to address the nuisance and safety issues that serve as the legitimate basis for the 2026 Ordinance. The burden placed on the city by allowing the plaintiffs to list and advertise their homes based upon actual occupancy, limited only by the 12-person cap, is outweighed by the considerations on the plaintiffs' side. Therefore, the balance of equities and

the public interest favor a narrow preliminary injunction on the first-floor provisions.

*     *     *

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the plaintiffs' motion for preliminary injunction.

The defendants are ENJOINED from enforcing the 2026 Ordinance to the extent it prohibits the plaintiffs from using first-floor space below the base flood elevation for determining the maximum allowable occupancy of STR properties and listing and advertising the same. This injunction applies only to the named parties in this suit, including all members of the Association. The motion is denied in all other respects.

Signed on Galveston Island this 1st day of May, 2026.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE